## RAILROAD COMPANY *v.* TRIMBLE.

1. A deed by which a party conveys "all his property and estate, whatsoever and wheresoever, of every kind and description," carries patent rights and extensions, if the party own any.

2. A decree in equity in one of the loyal States against a party who, having been engaged in the rebellion, was at the time a prisoner of war of the United States, outside of the State, and against whom there was no service of process, or any step taken to bring him before the court, is void; and any sale under it is also void.

3. Where there is doubt as to the proper meaning of an instrument, the construction which the parties to it have themselves put upon it, is entitled to great consideration; but where its meaning is clear, an erroneous construction of it by them will not control its effect.

4. A deed by which a patentee of an invention conveys all the right, title, and interest which he has in the "said invention;" as secured to him by letters patent, and also all "right, title, and interest, which *may* be secured to him from *time to time,*" the same to be held by the assignee for his own use and for that of his legal representatives, "to the full end of the term for which said letters patent *are* OR *may be* granted," carries the entire invention and all alterations and improvements, and all patents whensoever issued and extensions alike, to the extent of the territory specified.

5. A grant by a patentee of an extension of a patent, before any extension has issued, will carry, if the terms of the grant be proper ones, the legal as well as the equitable interest in the patent.

6. Where the owner of a patent granted the portion of his interest in it to another person in consideration of certain payments to be made by such person to third parties, and certain promises and agreements then made by him; and such person never made any of the payments which he was thus required to make, and by common consent of the grantor and grantee, the contract never went into operation in any way, because the grantee was unable to comply with any of his engagements, so that the grantor was compelled to pay, and did pay, the money which the grantee had agreed to pay; and the grantee during his lifetime never claimed any interest in the contract, but, on the contrary, always recognized the grantor's exclusive right, and acted as his agent in the patent, under a power of attorney, paying him a part of the profits for the privilege:

   *Held,* after the grantee's death, that the agreement did not prevent the grantor's bringing suit for the infringement of the patent without naming the grantee.

ERROR to the Circuit Court for Maryland, the case being thus:

The Patent Act of 1836* thus enacts:

"*Section* 11. That every patent shall be assignable in law, either as to the whole interest or any undivided part thereof, by any instrument in writing; which assignment, and also every grant and conveyance of the exclusive right under any patent to make and use, and to grant to others to make and use the thing patented within and throughout any specified part or portion of the United States, shall be recorded, &c.

"*Section* 14. Damages may be recovered by action on the case, in any court of competent jurisdiction, to be brought in the name of the person or persons interested, whether as patentees, assignees, or grantees of the exclusive right within and throughout a specified part of the United States."

*Section* 18 of the act authorizes, under certain circumstances, an extension of the patent beyond the term of its limitation, and thus continues:

"And thereupon the said patent shall have the same effect in law as though it had been originally granted for a term of twenty-one years. And the benefit of such renewal shall extend to assignees and grantees of the right to use the thing patented to the extent of their respective interest therein."

These statutory provisions being in force, a certain Howe obtained, on the 3d of August, 1840, a patent for an improvement in the manner of constructing the truss frame of bridges. He had previously, on the 10th of July, of the same year, obtained a patent on the same account, which was merged practically in that of August 3d. On the 9th of July, 1844, he assigned to one Isaac R. Trimble all his right in these two patents for certain States, including Maryland. This assignment (duly recorded) conveyed Howe's rights in these words:

"All the right, title, and interest which I have *in said invention,* as secured to me by said letters patent; and *also all right, title, and interest* which *may* be secured to me for *alterations* and

---

* 5 Stat. at Large, 121, 123.

*improvements* in the same *from time to time ;* . . . the same to be held and enjoyed by the said I. R. Trimble, &c., to the full end of the term for which said letters patent are or *may* be granted, as fully and entirely as the same would have been held and enjoyed by me had this assignment and sale not have been made."

Afterwards, on the 28th of August, 1846, another patent was granted to Howe, for an *improvement* in the manner of constructing these truss frames; and on the 18th of September, 1854, Howe having died meanwhile, his administrator, one Joseph Stone, in order to " secure to I. R. Trimble more perfectly his legal rights, and tend to a more speedy adjustment of any disputed claim," assigned to Trimble the same interest in the patent of 1846 which he held in the others.    The assignment recited that the alterations and improvements secured by the patent of 1846 already belong to Trimble, " who has used and paid for the same since the year 1846, as understood at the time."

On the application of the same administrator, Stone, the patent of 1846 was extended for seven years from the 28th of August, 1860.

On the 30th of May, 1861, Trimble executed a deed, duly recorded, of " all his property and estate, whatsoever and wheresoever, of every kind and description," to Anne Trimble (his wife) and Georgiana Presstman, in trust, &c.

The Philadelphia, Wilmington, and Baltimore Railroad Company during the years 1864, 1865, and 1866, that is to say, during the term of the extension, having built certain bridges in Maryland, adopting Howe's improvement, Trimble, his wife, and Presstman brought suit for damages. Plea not guilty, &c.    There was no question as to the validity of the patent, the only point being whether the assignment of July 9th, 1844, from Howe to Trimble passed Howe's interest in the extension of 1846.

The plaintiffs having put the case, as already stated, before the jury, the defendant gave in evidence an assignment dated April 1st, 1861, from Howe's administrator, Joseph Stone, to a certain Daniel Stone, of Philadelphia, of all the

administrator's interest in the patent of 1846, and its extension, for the State above mentioned.   This was followed by proof of an agreement between Trimble and Daniel Stone, dated 30th September, 1846.   This agreement, which was not recorded until July 27th, 1864, and after Stone's death, which event took place in December, 1863, recited the agreement between Trimble and Howe and the payments thereby stipulated to be made by Trimble.   Stone covenanted to pay one-half of the instalments still unpaid as they should mature.

This clause follows:

" And the said Isaac R. Trimble, in consideration of the said *payments, promises, and agreements* on the part of the said Daniel Stone as aforesaid, for and on the part of himself, the said Isaac R. Trimble, and his heirs, executors, and administrators, covenants and agrees, and by these presents doth covenant and agree, to sell and transfer, *and doth hereby sell and transfer* unto the said Daniel Stone, his heirs, executors, and administrators, *the one equal moiety* or half-part of all the right, title, claim, and interest of him, *the said Isaac R. Trimble*, of, in, and to the patent-right aforesaid, which he purchased as aforesaid of the said William Howe."

A copartnership between the parties in the business of building bridges under Howe's patents was then made by the agreement, and it was stipulated that if either party should at any time desire a dissolution, Trimble should name a sum which he would be willing to give or take for a moiety of the rights which he acquired from Howe, including the payments to Howe, and that Stone should thereupon decide whether he would buy or sell; and, further, that the contract might be dissolved at the expiration of six months after notice from either party.

The defendants then gave in evidence a transcript of the record in an equity proceeding in the Supreme Court of Pennsylvania, instituted March 10th, 1864, by this same Joseph Stone, administrator of Daniel Stone, against Trimble, as " formerly of said city of Philadelphia."   It alleged

a partnership between Daniel Stone and Trimble, and that the same was carried on in Philadelphia, and it produced what it charged was a copy of the articles of partnership of September 30th, 1846. It then charged that Trimble, " on or about the 29th day of April, 1861, absconded to parts unknown, abandoning the said copartnership business, and took up arms against the government of the United States, became a major-general in the so-called Confederate States army, was afterwards captured, and is now held at Johnston's Island, on Lake Erie, as a prisoner of war by the United States." It further charged that since April 29th, 1861, Trimble had taken no part in the management of the partnership business; that Daniel Stone died on November 26th, 1863, and that the complainant had administered on his estate; that no settlement of the business had ever been had; that a large amount was due from Trimble to Daniel Stone's estate; that the assets of the firm consisted in part of an interest in Howe's patents, *which had been extended for seven years from August 28th,* 1860; that great loss would result from lapse of time and non user, &c., unless the rights of the copartnership should be disposed of, &c. The bill then required the defendant to answer as to whether " the property of the partnership does not principally consist of a partial right under letters patent originally granted to Howe, on the 28th of August, 1846, *and afterwards extended for seven years from the 28th of August,* 1860;" and it prayed an account, injunction, receiver, &c., and a subpœna against Trimble. It was sworn to by Joseph Stone. No subpœna was ever issued, but on the production of two affidavits, sustaining the allegations of the bill as to Trimble's having gone into the Confederate army, and being then in prison at Johnson's Island, the court, March 26th, 1864, sixteen days after the filing of the bill, appointed one John E. Shaw, receiver, and ordered him to sell the partnership property. He filed an inventory, in which the Howe patent, as extended, was set down as the only assets of the partnership, and a sale of it for $300, to one Burton, was reported. He then filed a petition for the confirmation of the sale of the

patent and extension to Burton, and on June 11th, 1864, the sale was absolutely confirmed, and the receiver directed to execute the assignment to Burton of the Howe patent " to the full end of the time for which said letters patent have been extended."

[The articles of copartnership between Trimble and Stone, filed by the complainant, in the equity suit in Pennsylvania, as an exhibit with his bill, though in all other respects identical with the instrument filed in the Patent Office, and produced by the defendants on the trial, did not contain the words of actual sale, which were contained in the latter instrument, to wit: the words, " *and doth hereby sell and transfer,*" but confined themselves to an agreement to sell.]

Next followed an assignment dated June 11th, 1864, from this Shaw, receiver, to Burton, of all the interest of Daniel Stone and Trimble, as partners in the Howe patents.

Next was produced an assignment from Joseph Stone, administrator of Daniel Stone, to the same Burton, dated March 6th, 1865, in which he transfers to the assignee all the interest of the deceased in the Howe patents and extension.

The plaintiffs, by way of rebutting evidence, then proved by Trimble that Daniel Stone never made any of the payments stipulated to be paid by him in the agreement offered in evidence by the defendant; that by common consent, the agreement never went into operation in any way, because Stone was unable to comply with any of his engagements made in said agreement, and left their witness to pay, and the witness was compelled to pay, the instalments still due on the original purchase, which the witness himself did; that Stone never claimed any right or interest whatever during his life under that agreement, nor did he ever pretend to act under it; but, on the contrary, always recognized the witness's exclusive right to the interest referred to in said agreement, and acted as the witness's agent under a power of attorney, in constructing bridges thereunder, paying the witness a part of the profits as a compensation for the privi-

leges.   The witness further proved that he never was a resi-
dent or citizen, nor were any of the plaintiffs, at any time,
residents or citizens of Pennsylvania.

The evidence being closed, the plaintiffs presented their
prayer for instructions, as follows:

" That if the jury believe, that the agreement offered in evi-
dence by the defendant, executed by and between Trimble and
Daniel Stone, and bearing date the 30th September, 1846, never
went into effect and operation between the parties thereto, be-
cause of the inability and failure of the said Stone to comply
with the terms thereof on his part, and that the partnership
therein contemplated was, for the same reason, abandoned by
the common consent of the said parties; and the said agreement
was held and treated by and between them, in all particulars,
as inoperative and of no effect; and further believe that the
said Trimble, by reason of the failure of said Stone to pay the
moneys due on the purchase of the original patent, as in said
agreement stipulated, was compelled to pay, and did pay, the
same altogether himself; and that said Stone always, after the
execution of the said agreement, and notwithstanding the same,
recognized the said Trimble as the sole owner of the patent
right therein referred to, and acted only as his agent and attorney
in regard thereto, and in recognition of his sole right therein,
and not otherwise, and never caused or procured or intended
the said agreement to be recorded, but died in 1862 or 1863, be-
fore the recording of the same, and without setting up the same
or pretending to have acquired any rights thereunder, then the
said agreement is not to be regarded by the jury as passing any
right or title to the said Stone, which the defendant is entitled
to set up in connection with any other evidence in the cause, as
a bar to the right of the plaintiffs to recover; provided the jury
find the execution and delivery to the plaintiffs, Ann Trimble
and Georgiana Presstman, of the deed of the 13th of May, 1861,
produced by the plaintiffs, and that the same was recorded, &c."

This instruction the court gave.

The defendant presented eight prayers, of which the court
granted the first and seventh, and refused the rest.

The second was to the effect, that Trimble did not acquire

by Howe's assignment, or that of his administrator, a legal title to the extension of the patent, and·that the deed of trust executed by Trimble passed no legal title to the grantees.

The third maintained that the articles of copartnership between Trimble and Stone passed Trimble's title to a moiety of his interest in the patents, and that in the absence of any proof of a reconveyance in writing Trimble had no exclusive legal right in the extended term of the patent.

The fourth affirmed the validity of the receiver's deed to Burton, and that the proceedings in Pennsylvania, and that deed divested Trimble's entire interest.

The fifth was a corollary to the fourth,.and assumed that as the deed of trust was not recorded in the Patent Office when the.proceedings in Pennsylvania took place, it cannot operate to Burton's prejudice if neither·he, the complainant, nor the receiver had any knowledge of it.

The sixth asserted that the assignment by Howe's administrator to Daniel Stone, passed the legal right under the extension to said Stone.

The seventh, touching limitations, was granted.

The eighth asked an instruction that there was no evidence in the case from which the jury could find that the plaintiffs had an exclusive legal title to the use of the Howe improvement at the time of the infringement.

Under these instructions, excepted to by the defendant, the jury found a verdict of $12,500 for the plaintiff, and after judgment the case was brought here on error.

*Messrs. W. Schley and T. Donaldson, for the plaintiff in error:*

1. The alleged infringements occurred during the extended term of the patent, but the plaintiffs below did not adduce any evidence of title in that term. There is nothing in the agreement, nor in the assignment, relied on by them, which would justify the conclusion, that the parties had in contemplation the possible *extension* of the patents, or any of them. *Wilson* v. *Rousseau,** seems in point. There a covenant by

---

* 4 Howard, 682.

the patentee, prior to the Patent Act of 1836, whose 18th section authorized extensions, that the covenantee should have the benefit of *any* improvement in the machinery or *alteration* or *renewal* of the patent, did not include an extension by an administrator under that act; and other cases favor that view.* The defendant's second and eighth prayers ought to have *been* granted.

2. Even if there had been, in the agreement or assignment, or in both, a covenant, providing for an interest in any extension, it would, *as respects third parties*, have vested but an equitable right. By estoppel, the subsequently accruing right feeding the estoppel—it might, in a suit *inter partes*, even at law, have clothed the covenantee with a legal right. But, however this might be in such case, it could not create a legal right, to be enforced by the covenantee, or his assigns, in an action at law, against a stranger to the covenant.

3. But even if Trimble had an inchoate right, in the possible extension of the patent of 1846, his agreement with Daniel Stone passed to Daniel Stone *one-half* of such right; and, of course, the plaintiffs (assuming the agreement to be operative), would not have such exclusive title, as would enable them to maintain this suit.

4. The evidence of Trimble, as a witness, is not competent legal evidence to destroy the agreement; or to revest in him the moiety, which he had transferred to Stone. An assignment of a legal interest in a patent, or of an interest therein, can, under the 11th section of the Patent Act of 1836, only be made by writing. Even if the facts, stated by the witness, would avail in equity, as a ground for a decree setting aside the deed, still, in a suit at law, they cannot annul the agreement.†

---

* Wilson *v.* Simpson, 9 Id. 109; Bloomer *v.* McQuewan, 14 Id. 539; Hartshorn *v.* Day, 19 Id. 220; Chaffee *v.* Boston Belting Company, 22 Id. 223; Day *v.* Union Rubber Company, 3 Blatchford, 491, 504.

† Philadelphia and Trenton Railroad Company *v.* Stimpson, 14 Peters, 461; Hartshorn *v.* Day, 19 Howard, 220; Troy Iron and Nail Factory *v.* Corning, 1 Blatchford, 472.

5. Without entering into any discussion of the merits of the suit in the Supreme Court of Pennsylvania, it was shown that it was still pending; and that the court, by a receiver, had taken possession of the interest of Trimble in the patent right, long before the commencement of this suit. Coming into question, collaterally, in this suit, comity requires that the action of that court should not be declared a nullity in law. It was a proceeding in a court of equity; and partnership matters are properly cognizable in equity. It was a case in a matter within its jurisdiction. The appointment of a receiver is an ordinary exercise of power, for the purpose of preserving property, pending litigation; and it is the province of every court, having possession of a cause, to decide for itself, whether, upon the state of case before it, it is expected to exercise the power. The averments of the bill presented a strong case for prompt interference.

*Messrs. B. C. Presttman and S. T. Wallis, contra.*

Mr. Justice SWAYNE delivered the opinion of the court.

The controversy between the parties in this court is confined to questions relating to the title of the defendants in error under the extended patent of August 23, 1860, alleged to have been infringed by the plaintiffs in error. The instruction given, and those refused by the court below, which are brought under review, must be examined in the light of the facts which the bill of exceptions discloses. Before proceeding to consider the main questions in the case, we deem it proper to dispose of others arising upon the record in regard to which we have found no difficulty and entertain no doubt.

The deed of Isaac R. Trimble of the 30th of May, 1861, conveyed all his rights under the patent, whatever they may have been, to the grantees in that instrument. If his title was sufficient, theirs is so. This was not controverted by the counsel for the plaintiffs in error, and needs no further remark.

The assignment of the 11th of June, 1864, to Aaron E. Burton, made by John E. Shaw, as receiver appointed in the

case in equity in the Supreme Court of Pennsylvania, wherein Joseph Stone, administrator of Daniel Stone, was complainant, and Isaac R. Trimble defendant, was a nullity, and as such may be laid out of view. Looking into the record we find no evidence of the issuing of any process against Trimble, or that he was notified of the pendency of the suit by publication or otherwise. It does not appear that there was any step whatever taken to bring him before the court. The entire proceeding, as disclosed, was *coram non judice* and void. It may be added that Trimble's deed to his co-plaintiffs was prior in date to the filing of the bill, and that the title of the grantees in that deed could not be affected by a proceeding to which they were not parties.

If Trimble at the date of that deed held the title under the extended patent, which the defendants in error insist he had, the deed of confirmation to him from Howe's administrator, of the 18th of September, 1854, touching the patent of 1846, extended by the one in question, was inoperative and useless. It was referred to in the argument, as showing the construction put by the parties upon the deed of Howe to Trimble of the 9th of July, 1844. Where there is doubt as to the proper construction of an instrument, this feature of the case is entitled to great consideration. But where its meaning is clear in the eye of the law, the error of the parties cannot control its effect. In this view of the subject, conceding that Trimble took this conveyance, *not* out of abundant caution and to solve in his favor a doubt which might otherwise possibly arise against him, *but* because he deemed it necessary to give him a title which he did not already possess, his legal rights in this controversy are just what they would have been if that instrument had not been executed.

If the construction given to the deed of Howe by the counsel for the defendants in error be correct, and no part of the title vested in Trimble by that deed passed to Daniel Stone by the agreement of the 30th of September, 1846, between him and Trimble, as the counsel for the defendants in error insist, there was nothing for the deed of Howe's

administrator to Stone of the 1st of April, 1861, nor for the deed of Stone's administrator of March 6, 1865, to Burton, to operate upon, and both of them were also without effect upon the rights of the parties in this litigation.

This brings us to the examination of the deed of Howe to Trimble, and of the agreement between Trimble and Stone. They are the hinges upon which the controversy turns. The stress of the argument on both sides was properly confined to these subjects in their several aspects of fact and of law.

The deed from Howe recites that he had obtained from the United States two patents for new and useful improvements in the construction of truss bridges and other structures, one dated on the 10th of July, the other on the 3d of August, in the year 1840. The instrument is a deed poll. After setting out the consideration, it proceeds as follows: "I have assigned, sold, and set over, and do hereby assign, sell, and set over, all the right, title, and interest which I have *in said invention,* as secured to me by said letters-patent, *and also all right, title, and interest* which may be secured to me for alterations and improvements on the same *from time to time,* for, to, and in the following states, viz.," &c. . . . "the same to be held and enjoyed by the said I. R. Trimble for his own use and behoof, and for the use and behoof of his legal representatives to the full end of the term for which said letters-patent are *or may be granted,* as fully and entirely as the same would have been held and enjoyed by me had this assignment and sale not have been made." A careful analysis of these provisions eliminates the following results: Howe assigns to Trimble all his title and interest in the inventions secured to him by the two patents mentioned, in respect to the territory specified, and also all the right and title which should be secured to him for alterations and improvements in the inventions, *from time to time* thereafter, for the same territory, to be held and enjoyed by Trimble to the full end of the terms for which patents had been theretofore, or might be thereafter, granted, in all respects as they would have been held and enjoyed by the assignor if the assignment had not been made.

The language employed is very broad.  It includes alike the patents which *had been* issued and all which might be issued thereafter.  No discrimination is made between those for the original inventions and those for alterations and improvements, nor between those which were first issues. and those which were reissues or renewals and extensions. The entire inventions and all alterations and improvements, and all patents relating thereto, whensoever issued, to the extent of the territory specified, are within the scope of the terms employed.  No other construction will satisfy them. Upon the fullest consideration we have no doubt such was the meaning and intent of the parties.

The effect of such a contract, we think, has been settled by this court in *Gayler* v. *Wilder and others.*\*   Fitzgerald, the inventor, before the patent was issued, assigned his entire right to Enos Wilder.  The assignment contained a request that the patent should be issued to the assignee, and was duly recorded in the Patent Office.  This brought the case within the terms of the 6th section of the act of 1836. Fitzgerald made no assignment after the patent was issued to him.  Enos Wilder, his assignee, assigned to Benjamin Wilder, who was the plaintiff in the action.  The defendants insisted that Enos Wilder had not the legal, but only an equitable title.  Upon the question whether an assignment subsequent to the issuing of the patent was necessary to pass the former to the assignee, this court said: "We do not think the act of Congress requires it, but that when the patent issued to Fitzgerald, the legal right to the monopoly and the property it created was, by the operation of the assignment then on record, vested in Wilder."  The argument which controlled the judgment of the court may be thus stated: Fitzgerald had an inchoate right at the time of the assignment, the invention being then complete and the specification prepared.  It appeared, by the language of the assignment, that it was intended to operate upon the perfect legal title, which he then had a lawful right to ob-

---

* 10 Howard, 477.

tain, as well as upon the inchoate right which he then possessed.   There was no sound reason for defeating the intention of the parties by restricting the assignment to the latter interest, and compelling the parties to execute another transfer, unless the act of Congress required it, which, in the opinion of the court, it did not.   The act of 1836 declares that every patent shall be assignable in law.   The thing to be assigned is not the mere parchment on which the grant is written, but the monopoly which the grant confers—the right of property which it creates.  "And when the party has acquired an inchoate right to it, and the power to make that right perfect and absolute at his pleasure, the assignment of his whole interest, whether executed before or after the patent issued, is equally within the provisions of the act of Congress."  We concur in these views.   The rule laid down is the law of this tribunal upon the subject.   There the patent was an original one, here it is an extension.   The question before us arises under the 11th and 18th sections of the act of 1836.   But the arguments which controlled the decision in that case apply in this with equal force.   The same considerations are involved in both.   There is no substantial ground of distinction.   The application of the same principle to the assignment of an extended patent, made before the extension, is an inevitable corollary from the reasoning and ruling of the court.   Without, in effect, overruling that adjudication, we cannot hold that Trimble had not a legal title under the extended as well as under the original patent.   In our judgment he had such a title.

In this connection our attention has been called by the counsel for the plaintiffs in error to *Wilson* v. *Rousseau*,[*] and several other cases.   None of them turned upon the question we have been considering, and neither of them contains anything in conflict with the proposition established by *Gayler* v. *Wilder*.

It remains to consider the contract between Trimble and Daniel Stone.

---

[*] 4 Howard, 682.

It recites the agreement between Trimble and Howe, and the payments thereby stipulated to be made by Trimble. Stone covenants to pay one-half of the instalments still unpaid as they should mature.

This clause follows:

"And the said Isaac R. Trimble, in consideration of the said *payments, promises, and agreements* on the part of the said Daniel Stone as aforesaid, for and on the part of himself, the said Isaac R. Trimble, and his heirs, executors, and administrators, covenants and agrees, and by these presents doth covenant and agree, to sell and transfer, *and doth hereby sell and transfer* unto the said Daniel Stone, his heirs, executors, and administrators, *the one equal moiety* or half-part of all the right, title, claim, and interest of him, *the said Isaac R. Trimble*, of, in, and to the patent-right aforesaid, which he purchased as aforesaid of the said. William Howe, the sale heretofore made to Reading excepted."

A copartnership between the parties in the business of building bridges under Howe's patents was then entered into, and it was agreed that if either party should at any time desire a dissolution, Trimble should name a sum which he would be willing to give or take for a moiety of the rights which he acquired from Howe, including the payments to Howe, and that Stone should thereupon decide whether he would buy or sell. It was further provided that the copartnership might be dissolved at the expiration of six months after notice by either party.

Trimble was examined as a witness, and testified as follows: Stone never made any of the payments which he was required to make by the contract. By common consent of the parties, the contract never went into operation in any way, because Stone was unable to comply with any of his engagements. Trimble was compelled to pay, and did pay, the full amount of the instalments still due on his contract with Howe. Stone during his lifetime never claimed any right under the contract; but, on the contrary, always recognized Trimble's exclusive right to the interest referred to in the agreement, and acted as Trimble's agent in building

bridges, under a power of attorney, paying Trimble a part of the profits for the privilege. There was no other evidence on the subject. Trimble's testimony was uncontradicted.

The agreement was recorded in the Patent Office on the 27th of July, 1864, after Stone's death, and more than eighteen years after the date of its execution.

The words, "and do hereby sell and transfer," found in the copy from the Patent Office, which was used in evidence in the court below, are not in the copy annexed to the bill filed in the Supreme Court of Pennsylvania. But, conceding that they were in the contract as executed, and that the contract had the same effect in transferring to Stone a moiety of Trimble's rights and interests, which Trimble's contract with Howe had in transferring the whole to Trimble, then a question arose for the jury as to the effect of the facts disclosed in Trimble's testimony. Upon the trial the court, at the request of the plaintiffs, charged the jury in effect, that if they found the facts to be as testified by Trimble, the contract between Trimble and Stone "was not to be regarded as passing any title to Stone, which the defendant was entitled to set up in connection with any other evidence in the cause as a bar to the right of the plaintiffs to recover," provided they found also the execution and delivery of Trimble's deed to his co-plaintiffs. To this instruction the plaintiffs in error excepted.

If the facts were as alleged by Trimble, his contract with Stone was stillborn. It never had any vitality. Neither the legal representative of Stone nor any one in privity with him asserts its validity in this litigation. It is vicariously put forward by the plaintiffs in error. They seek to give it life and vigor, and invoke its aid for their protection.

If a deed of real estate be executed and recorded, *primâ facie* it conveys the legal title; but if it be shown it was not delivered, that destroys its effect.* A judgment may be assigned without written evidence of the transfer.† A party

---

\* Maynard *v.* Maynard et al., 10 Massachusetts, 456.

† Ford *v.* Stuart, 19 Johnson, 342.

may waive a constitutional provision which applies in his favor.* Fraud or mistake in the execution of a deed may be shown at law.† The most solemn contracts under seal, where the statute of frauds is not involved, may be changed or abrogated by a new parol agreement, express or implied; and a contract within the statute may be taken out of it by the conduct of the parties.‡ If Stone's administrator were to sue Trimble, and the facts should be established as Trimble alleges them to be, the action would be barred by *estoppel in pais.* We think the instruction was correct, and that it properly submitted this part of the case to the jury.

The plaintiffs in error submitted eight prayers for instructions. The 2d, 3d, 4th, 5th, 6th, and 8th, were refused. The refusal was excepted to. Some of the points which they present were not insisted upon in the argument at the bar. The others are sufficiently answered by what has already been said.

JUDGMENT AFFIRMED.

Mr. Justice BRADLEY dissented, on the ground that there was not enough language in the assignment of Howe to Trimble to show that a transfer of the extension was intended.

---

* Baker *v.* Braman, 6 Hill, 48.
† Hartshorn, Executor, *v.* Day, 19 Howard, 223.
‡ Emerson *v.* Slater, 22 Howard, 41.