## HENDRIE *v.* SAYLES.

Where, before the issue of letters-patent therefor, a party assigns his invention, and letters are lawfully issued to the assignee in his own name, the latter is entitled, where the instrument of assignment does not show a different intention, to obtain a renewal of them at the expiration of the original term.

APPEAL from the Circuit Court of the United States for the Eastern District of Michigan.

Lafayette F. Thompson and Asahel G. Bachelder, claiming to be inventors of a railroad brake, executed, before letters-patent were issued to them therefor, the following assignment, which was duly recorded in the Patent Office : —

" Whereas we, Lafayette F. Thompson, of Charlestown, and Asahel G. Bachelder, now or late of Lowell, in the State of Massachusetts, have invented an improved mode of operating the brakes of railway cars, and have applied, or intend to apply, for letters-patent of the United States of America therefor.

" Now, therefore, this indenture witnesseth, that for and in consideration of $100, in hand paid, the receipt whereof is hereby acknowledged, I have assigned and set over, and do hereby assign, sell, and set over, to Henry Tanner, of Buffalo, in the State of New York, all the right, title, and interest whatever which we now have, or by letters-patent would be entitled to have and possess, in the aforesaid invention, the said invention being described in the specification as prepared and executed by us, or to be prepared and executed by us, for the obtaining of said letters-patent ; the whole to be enjoyed and held by the said Henry Tanner and his legal representatives, to the full extent and manner in which the same would have been or could be held and enjoyed by us had this assignment never been made.

" And we do, by these presents, authorize the Commissioner of Patents to issue the said letters-patent to the said Henry Tanner

and his legal representatives, as the assignee of our whole right and title to the same and to the new invention aforesaid.

" In witness whereof, we have hereto set our signatures and seals, this first day of April, A.D. 1852.

"LAFAYETTE F. THOMPSON.    [SEAL.]

" ASAHEL G. BACHELDER.      [SEAL.]

" Witness, R. H. EDDY."

Letters-patent were issued on the sixth day of the following July to Tanner, who, July 13, 1854, assigned to Thomas Sayles all his remaining right and title in them for the unexpired term thereof, and " any extension thereof that may hereafter be granted," excepting, however, certain reserved territory and specified railroad corporations. Said letters were renewed and extended for seven years from July 6, 1866.

After that date, and until some time in 1873, Hendrie infringed the patents within the territory not so reserved, and Sayles filed his bill for an account, &c., to which Hendrie demurred, upon the ground that Sayles had no legal title to the extended term. The demurrer was overruled, and a decree for want of an answer passed for the complainant. Hendrie thereupon appealed here.

*Mr. D. Bethune Duffield* for the appellant.

Unless the complainant has the sole legal title to the extended term, he cannot maintain this suit. 1 Barb. Ch. Pr. 39; 1 Dan. Ch. Pr. 241. The whole case depends upon the assignment of April 1, 1852, to Tanner. If it gave him such an interest in that term that the legal title thereto would vest in him the moment the extension should be granted, the demurrer is bad.

The assignment is to be construed like any other contract to carry out the intention of the parties, and to further that intention their situation and the surrounding circumstances may be considered. 2 Pars. Contr. 499; *Shore* v. *Wilson*, 9 Cl. & Fin. 555–569; *Mumford* v. *Getling*, 7 C. B. N. S. 309; *Carr* v. *Montefiore*, 5 B. & S. 427. It was made before the issue of the patent. The inventors then had an inchoate right to the exclusive use of their invention, it being complete ; and they could assign it, so that the legal right which would result from the issue of the patent would vest in Tanner. *Gayler* v. *Wilder*, 10 How. 477. And they perhaps had an

inchoate right to an extension, assignable with the same effect as their right to a patent. *Railroad Company* v. *Trimble*, 10 Wall. 367.

The granting clause of the instrument, when taken as a whole, plainly indicates the invention and the letters-patent intended to be conveyed, as described in and to be obtained by the specification, and the latter was not prepared to obtain the extension.

And again, the inventors authorize the issue of "said letters-patent" to Tanner, as the assignee of their "whole right and title to the same," not to any letters-patent, but to "said letters-patent." There is no grant of, and no reference to, an extension. This clearly shows that the original term was alone intended to be conveyed.

This court has never passed directly upon the question whether an assignment of the "invention" necessarily includes both terms of a patent, or clearly shows an intention so to do. The authorities on the circuit rule otherwise. *Clum* v. *Brewer*, 2 Curt. C. C. 520 ; *Waterman* v. *Wallace*, 13 Blatch. 132.

*Mr. Albert H. Walker, contra.*

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Patents or any interest therein may be assigned by an instrument in writing, and the patentee, his assigns or legal representatives, may in like manner grant and convey an exclusive right under the patent ; and where the conveyance precedes the granting of the patent, it may be issued to the assignee, the assignment thereof being first entered of record in the Patent Office. 16 Stat. 202, 203 ; Rev. Stat., sects. 4895, 4896.

Sufficient appears to show that the complainant claims to be the lawful owner of the patented improvement, which consists of a new mode of operating railroad brakes, and that he became such, as he alleges, by virtue of an instrument of assignment, bearing date July 13, 1854, from the assignee of the original inventors.

Prior to the granting of the patent, to wit, on the first day of April, 1852, the inventors conveyed and set over to the assignor of the complainant all the right, title, and interest whatever which they had, or by letters-patent would be entitled to have and possess, in the described invention ; and the record shows

that the assignment was duly recorded in the Patent Office, as required by law.

Such an assignment may be made before the patent is obtained; and provision is made that the patent may be issued to the assignee, provided the application is made and duly sworn to by the inventor himself, and the assignment is duly recorded. When so granted, the exclusive interest is vested as a legal estate in the assignee, who thus becomes the lawful holder of the invention, and the inventor himself is divested of the legal title. Curtis, Patents (4th ed.), sect. 168; 16 Stat. 202.

By virtue of the assignment the legal title to the invention vested in the assignee of the inventors, and the record also shows that the patent, on the 6th of July, 1852, was duly issued in his name, it appearing that the application for the same was duly sworn to by the inventors, and that the assignment was duly recorded in the Patent Office, as the act of Congress requires.

Even the respondent concedes that the legal title to the invention was vested in the assignee, as the patentee named in the patent, for the period of fourteen years, which is the term for which the patent was granted. From the date of the assignment to the close of the term for which the patent was granted, it is conceded that the legal title to the invention became vested in the assignee of the inventors, by virtue of the instrument of assignment which they executed to the assignee before the patent was issued. Such an instrument, though executed before the patent is granted, transfers the legal title to the assignee. *Gayler* v. *Wilder*, 10 How. 477; *Rathbone* v. *Orr*, 5 McLean, 131; *Rich* v. *Lippincott*, 2 Fish. 1; *Herbert* v. *Adams*, 4 Mas. 15; *Dixon* v. *Meyer*, 4 Wash. 72.

Assume that the legal title to the invention was in the assignee, and it requires no argument to prove that he could convey the entire interest to a purchaser for a valuable consideration. Well-founded doubt upon that subject cannot arise, and the record shows that the assignee of the inventors, on the 13th of July, 1854, sold, assigned, transferred, and conveyed to the complainant all his right, title, interest, and claim whatsoever which he then had or may have in and to said invention and patent, and any extension thereof that may hereafter be

granted, with certain specified exceptions not material to be noticed in this investigation. Before the term of the original patent expired, due application was made for a renewal and extension of the patent; and it is conceded that it was duly extended and renewed by the commissioner for the further term of seven years from and after the expiration of the first term.

Controversy arising between these parties, the complainant instituted the present suit in the Circuit Court against the respondent. When instituted, the bill of complaint contained many matters which are wholly immaterial in the present controversy, and consequently are omitted. Suffice it to say in this connection that the complainant charges that the respondent has infringed his exclusive right under the extended term of the patent, and prays for process and for an account.

Service was made, and the respondent appeared and demurred to the bill of complaint, showing for cause that the complainant has not in and by his amended bill of complaint made any such title in himself to the extended term of the patent therein set forth as entitles him to any relief. Hearing was had, and the court overruled the demurrer and entered a decree in favor of the complainant, the respondent electing to stand upon his demurrer. Prompt appeal was taken by the respondent to this court, and he maintains the same proposition that he did in the court below, to wit, that the bill of complaint shows no legal title to the extended term in the complainant.

When the patentee assigns the patent to a purchaser, the assignee acquires only the exclusive right to make, use, and vend the patented improvement during the term for which the patent was granted, unless the instrument of assignment contains words showing that the parties intended that the instrument should be more comprehensive and include the extended term in case an extension should be granted by the commissioner. During the term for which the patent is granted the assignee of all the right, title, and interest of the patentee in the same may himself sell, assign, and convey the patent for the residue of the term granted, or he may continue to hold the same during that period, and may make, use, and vend the patented improvement, but his title to the invention terminates when the term of the patent expires; nor will his assignee or

grantee stand in any better condition, as the maxim *Nemo dat qui non habet* applies to the assignee of the patentee. Benjamin, Sales (2d ed.), 5; *Peer* v. *Humphrey*, 2 Ad. & E. 495.

Assignees of the patent from the patentee can only sell and convey what they acquire by virtue of the instrument of assignment, and inasmuch as the presumption is that the grantor contracts to sell and convey only what is secured by the patent, the proper construction of the instrument limits the right conveyed to the term expressed in the patent, unless the instrument contains words to indicate a different intent. Holders of patents may not be the inventors, nor is it true in every case that the patent is issued to the inventor. On the other hand, the inventor is vested by law with the inchoate right to the exclusive use of the invention to every extent that the Patent Act accords, which he may perfect and make absolute by proceeding in the manner which the law requires.

*Bona fide* inventors' rights are never derivative, and they, even before the patent is issued, have the exclusive inchoate right not only to the original patent that may issue, but to any reissue, renewal, or extension that may thereafter be granted under the Patent Act. Authorities to support that proposition are numerous and decisive, and it is equally clear that they may sell, assign, or convey the invention, including the inchoate right to obtain the patent, and to surrender and reissue it or to procure a renewal or extension of the monopoly from the commissioner, if the instrument of assignment contains apt words to show that such was the intent of the grantor.

Such an inventor has no exclusive right to make, use, and vend the improvement until he obtains a patent for the invention, and that is created and secured by the patent; nor can the inventor maintain any suit for infringing the same before the patent is issued, but the inventor, says Mr. Chief Justice Taney, is vested by law with an inchoate right to the exclusive use, which he may perfect and make absolute in the manner which the law requires. *Gayler* v. *Wilder, supra.*

Enough appears in that case to show that the invention had been made and the specification prepared to obtain a patent before the instrument of assignment was executed, and the question was whether the instrument was sufficient to transfer

the inchoate right of the inventor to the assignee, it appearing by the language of the instrument that it was intended to operate upon the perfect legal title which the inventor then had a lawful right to obtain, as well as upon the imperfect and inchoate interest which he also possessed. Speaking to that point, the learned Chief Justice said there would seem to be no sound reason for defeating the intention of the parties by restraining the operation of the assignment to the right to obtain the patent, and compelling them to execute another transfer of the other inchoate right, unless the act of Congress makes it necessary in order to render the transfer complete; and the court held that no such second assignment is required, as the matter to be assigned is the monopoly or the right of property vested in the inventor, so that when the party acquired an inchoate right to it, and the power to make that right perfect and absolute at his pleasure, the whole interest of the inventor, whether the instrument was executed before or after the patent issued, passed to the assignee.

Two other reasons were given by the Chief Justice in support of the construction of the assignment, which the court adopted in that case, both of which are entitled to weight: 1. That no purpose of justice would be subserved by the opposite rule, which would require the execution of a second instrument to accomplish what the parties intended to do by the first. 2. That the construction was the same as had prevailed in such cases under the prior patent acts. *Herbert* v. *Adams, supra.*

Views of a like character were expressed by Mr. Justice Curtis at a later period, in a case of great importance. *Clum* v. *Brewer,* 2 Curt. C. C. 520. Prior to obtaining the patent, the inventor conveyed to the assignee one undivided fourth part of the invention, and all his rights and property therein; and the patent having subsequently been obtained and the term extended, the question was whether the assignee held the same interest in the extended term. Both parties were represented by able counsel, and the court, upon the authority of *Gayler* v. *Wilder (supra)*, held that the extended term passed by the assignment as well as the original term. Discussion, it seems, had taken place at the bar in respect to the extent of the prop-

erty of the inventor in his invention before it is secured by a patent. Preliminary to that subject he adverted to the fact that the instrument of assignment only conveyed one quarter part of the inchoate right. But the inventor, remarked the judge, has not only an inchoate right to obtain a patent securing to him the exclusive right to his invention for the term of fourteen years, but also a further inchoate right to have the term extended on the conditions annexed by the law to the right.

Differences of opinion prior to that time existed in some quarters whether the inchoate right to obtain an extension of the term was the proper subject of purchase and sale; but the court in that case answered the inquiry in the affirmative, and supported his conclusions by the following satisfactory reasons: 1. That the inchoate right to obtain an extension of the patent appertains to the invention as well as the inchoate right to obtain the original patent. 2. That each is incomplete, and its completion depends upon the compliance by the inventor with the statutory conditions and the performance by public officers of certain acts prescribed by law. 3. Though there is an additional condition annexed to the right to obtain an extension of the term beyond what is required to obtain a patent, yet that does not change the nature of the right, and it no more prevents it from being the subject of a contract of sale than any other condition which is attached to it; and he held that the inchoate right to obtain the extension passed by the assignment as well as the inchoate right to obtain the original patent.

Instruments of the kind have more than once been construed by this court, and always in the same way, where the instrument was executed under existing laws. *Railroad Company* v. *Trimble*, 10 Wall. 367; *Nicolson Pavement Co.* v. *Jenkins*, 14 id. 452.

A deed of assignment, says Mr. Justice Swayne, by which a patentee of an invention conveys all the right, title, and interest which he has in the "said invention," as secured to him by letters-patent, and also all right, title, and interest which may be secured to him from time to time, the same to be held by the assignee for his own use and that of his legal representatives to the full end of the term for which said letters-patent are or

may be granted, carries the entire invention and all alterations and improvements and all patents whatsoever, issued and extensions alike, to the extent of the territory specified in the instrument.

Beyond doubt, the assignment in that case was made subsequent to the issuing of the patent; but the case fully supports the proposition that the operation of such an instrument is not limited to the term specified in the patent, where the instrument contains apt words to show that the parties intended that its operation should be more comprehensive.

Decisive support to that view is also found in the second case. An assignment of an invention secured by letters-patent, says Mr. Justice Davis, is a contract, and, like all other contracts, is to be construed so as to carry out the intention of the parties to it; and he adds, that it is well settled that the title of an inventor to obtain an extension may be the subject of a contract of sale, and when it is, the instrument by which the sale was effected is the proper subject of construction, in order to determine whether it secures to the purchaser any subsequent extension of the patent, or merely the patent for the original term.

Conveyance in that case was made of all the title and interest the patentee had in the reissued patent, to be enjoyed by the grantee and his legal representatives to the full end of the term for which the patent is or may be granted. Taking the whole instrument together, say the court in that case, it is quite clear that it was intended to secure to the grantee and his assigns the right to use the invention in the locality specified as long as the patentee and his legal representatives have the right to use it anywhere else. Manifestly, say the court, something more was intended to be assigned than the interest secured by the patent, and the court decided that it included the renewal as well as the residue of the original term.

Apt words are required, where the conveyance is of an existing patent, to show that the conveyance includes more than the term specified in the patent; but where the conveyance is of the invention, whether before or after the patent is obtained, the rule is otherwise, unless there is something in the instrument to indicate a different intention, the rule being that a

conveyance of the described invention carries with it all its incidents, and all the well-considered authorities concur that the inchoate right to obtain a renewal or extension of the patent is as much an incident of the invention as the inchoate right to obtain the original patent; and if so, it follows that both are included in the instrument which conveys the described invention, without limitation or qualification. *Emmons* v. *Sladden*, 9 Off. Gaz. 354; *Gayler* v. *Wilder*, *supra*; *Clum* v. *Brewer*, *supra*; *Carnan* v. *Bowles*, 2 Bro. C. C. 84.

Viewed in the light of these suggestions, the court is of opinion that the entire interest in the invention passed from the inventors to the assignor of the complainant by the instrument of assignment which they executed to him before the patent was granted, and that the patent was properly issued in the name of their assignee. They, the inventors, do not controvert the exclusive right of the complainant, nor does the respondent deny that the terms of the assignment from the assignee of the inventors to the complainant are amply sufficient to convey to him all that he claims, if his assignor at the time held the title to obtain the extended term; and the court being of opinion that the assignor of the complainant did hold that right, it follows that there is no error in the record.

*Decree affirmed.*