INDIVIDUAL DRINKING CUP CO. v. OSMUN-COOK CO.

(District Court, D. New Jersey. January 29, 1915.)

No. 838.

1. PATENTS ☞328—VALIDITY AND INFRINGEMENT—HOLDER FOR INDIVIDUAL DRINKING CUPS.

The Luellen patent, No. 1,043,854, for a device for storing and dispensing individual drinking cups, was not anticipated and discloses invention; also *held* infringed.

2. PATENTS ☞183—ASSIGNMENT—EFFECT OF ASSIGNMENT OF PENDING APPLICATION.

It is not essential that an assignment of a pending application for a patent should contain a request that the patent issue to the assignee, in order that it should automatically vest the legal title thereto in the assignee when issued.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 259–262; Dec. Dig. ☞183.]

3. PATENTS ☞183—ASSIGNMENT OF APPLICATION—CONSTRUCTION AND EFFECT.

An instrument by which an inventor assigns a pending application for a patent, and any patent which "may be" granted thereon must be construed as intended to pass, not only the assignor's inchoate right, but also the full legal and equitable title to the patent when issued and to the invention covered thereby.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 259–262; Dec. Dig. ☞183.]

4. PATENTS ☞303—SUIT FOR INFRINGEMENT—PRELIMINARY INJUNCTION.

Where the questions raised by the defendant in an infringement suit depend on the construction of prior patents or on written documents relating to title, they may properly be determined on a motion for preliminary injunction.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 496–498, 502, 503; Dec. Dig. ☞303.]

In Equity. Suit by the Individual Drinking Cup Company against the Osmun-Cook Company for infringement of letters patent No. 1,043,854, for device for holding and distributing individual drinking cups, granted to Lawrence W. Luellen November 12, 1912. On motion for preliminary injunction. Granted.

Clifford E. Dunn, of New York City, for plaintiff.
Albert H. Walker, of New York City, for defendant.

HAIGHT, District Judge. [1] The validity of the patent in suit has been sustained by this court in a suit instituted by the present plaintiff against the United States Drinking Cup Company, decided in September, 1914, 220 Fed. 331. Preliminary injunctions against the infringement of it have also been issued in the middle district of Pennsylvania in suits instituted by the present plaintiff against Bernard B. Megargee and the Public Service Company, respectively. The decrees in both of those cases were entered on December 4, 1914. In neither case, however, was a defense interposed. The case in this district was contested, and the decision upholding the validity of the patent was rendered after final hearing. The patent, as well as the

prior art, then before the court, is fully described in the memorandum filed in that case. The defendant is engaged in selling the alleged infringing device. It contends that the plaintiff's patent is invalid for want of invention, that the device which it sells does not infringe, and that the plaintiff's title to the patent is defective.

It is urged primarily that the court should refuse a preliminary injunction, because the sales made by the defendant of the alleged infringing device have been and will be so few that they cannot appreciably injure the plaintiff, and because the application is not made in good faith, but for the purpose of procuring a decree which can be used to intimidate others who might otherwise purchase the alleged infringing device for sale or otherwise. It is claimed that if the plaintiff were acting in good faith the suit should have been brought against the manufacturer, the Public Service Cup Company. Although the sales made by the defendant have been few up to the present time, this can scarcely be considered a good reason for refusing the plaintiff the relief to which it would otherwise be entitled. It surely does not lie in the mouth of defendant's counsel to accuse the plaintiff of bad faith in bringing suit against the present defendant rather than against the manufacturer, when it is considered that a short time before this suit was instituted the plaintiff brought an action in this court against the Public Service Cup Company and the predecessor in business of the present defendant, based on the same infringing device as is now before the court. Counsel for the present defendant appeared in that case in response to the order to show cause why a preliminary injunction should not issue, and claimed that, as the Public Service Cup Company was a corporation of another state, the suit could not be maintained against it, because this court could not secure jurisdiction. For that reason the effort to secure a preliminary injunction in that suit was abandoned. If there had been a desire to have had the questions at issue in this case settled in a suit between the present plaintiff and the manufacturer of the infringing device, the latter could have readily submitted to the jurisdiction of this court in that case.

Certain patents which were not before this court in the United States Drinking Cup Company Case are now offered in support of the contention that the plaintiff's patent is invalid for want of invention. They consist of three British patents and four United States patents. Of these only two, a British patent to Lawrence, No. 14,501, granted in 1888, and an American patent to Stafford, No. 739,232, granted in 1903, were considered in the argument of counsel. The others have, however, been examined, and may be disposed of with the remark that it is difficult to see their relevancy, or why they were offered. The Stafford patent exhibits a mailing tube for use in mailing papers, drawings, etc. It is designed to be made of "cardboard or other, preferred material." At one end a flange is formed by bending inwardly the edge of the cylinder or tube. The purpose of the flange is to engage the cup, in which one end of the article to be mailed is inserted, and thus close that end of the cylinder. At the other end of the tube there is attached a flexible covering, stated in the specification as "preferably consisting of a strip of paper or other fabric pasted or otherwise secured

to the outside of the cylinder and projecting beyond the edge thereof." This is designed to be folded at that end of the cylinder and thus close the same there. It is urged that this cylinder, constructed of proper material, would perform the same functions, in the same way, as the device of the patent in suit It is evident, however, that the use to which this was designed to be put is not analogous to that of the patent in suit. The relations between them are remote. A new result has been produced by the device of plaintiff's patent So far as double use is concerned (which seems to be the basis of defendant's contention regarding the effect of the Stafford patent), what was said in the memorandum filed in the United States Drinking Cup Company Case regarding invention in the patent in suit, in view of the prior state of the art, applies with equal force here. In fact, the prior art introduced in that suit would seem to be more relevant to this question than that introduced in the present suit.

The British patent to Lawrence exhibits a complicated machine for dispensing individual cups and liquids. It is designed, primarily, as a coin-controlled apparatus Aside from this feature, the cups could be dispensed only by the manipulation of a handle or lever. It is thus evident that it is designed to work on an entirely different principle than the device of the patent in suit. It is true that by making many changes, such as removing all of the mechanism described in the patent, eliminating altogether part of the means provided for holding the cups in position, and substituting a cylinder for retaining the cups, this machine could be made to perform the same function, in the same way, as the Luellen machine But, in my judgment, it would require more than mechanical skill to have perceived that this could have been done, and to have thought of doing it, and this is none the less so because the patentee is presumed to have had before him the Stafford patent, and all the other prior art which has been exhibited in this case and that against the United States Drinking Cup Company. Nothing has been developed, therefore, in this case, at least as to the majority of the claims of the patent, which would lead me to change the judgment expressed in United States Drinking Cup Case on the question of invention.

On the question of infringement, it is urged that the primary patent in the art is the British patent to Lawrence, that the plaintiff's patent is secondary, and that therefore, because of the narrow range of equivalents which must thus be allowed, the device sold by the defendant does not infringe. The specifications of the plaintiff's patent describe an apparatus in which the means used for retaining and dispensing the cups is rigid and fixed, and which permits the cups to be withdrawn through the flexing of the latter. All of the claims, except the fifth, however, are not so limited. In the defendant's apparatus, when a cup is withdrawn, the means provided for retaining and dispensing the cups yields or flexes rather than the cups. This feature, it is claimed, avoids infringement, if the plaintiff's patent is a secondary one. Whether it is considered that the patent in suit is primary or secondary, in the sense above mentioned, seems immaterial. It was held in the Paper Bag Patent Case, 210 U. S. 405, 415, 28 Sup. Ct.

748, 52 L. Ed. 1122, that in either secondary or primary patents the range of equivalents depends upon and varies with the degree of the invention. The invention in this case is a device whereby a number of nested cups are retained in a receiving chamber, free from dust or other contamination, and which permits a part of one cup at all times to project from the chamber so as to be easily withdrawn by the hand, and at the same time keeps the rim thereof, which touches the lips, and the other cups, inside of the receiving chamber and free from contamination. The invention seems to be as broad as most, if not all, of the claims.

The only similarity between this device and the Lawrence device is that they both dispense cups, right side up, one at a time, while retaining the others within the distributing chamber. The principles upon which they respectively operate, as well as the means by which they respectively accomplish the dispensing, are essentially different. In the Lawrence patent, this is accomplished through certain mechanism controlled by a lever or handle, while in the patent in suit it is accomplished without resort to any mechanism, but simply by the manner and form in which the "retaining means" is made. Luellen was the first to do this, and it is undeniable that a great step in advance was thereby made. The alleged infringing device operates on the same principle as that of the patent; the only difference being that before mentioned. Luellen did not confine himself to the specific means described in his specification, but was explicit in his declaration that there might be many modifications and changes from the forms described. A very similar difference in devices was presented in the Paper Bag Patent Case, supra, and it was held that there was an infringement. In the Megargee suit the means which were used consisted of flexible rubber gaskets, and in the Public Service Company suit flexible springs, like those of the defendant's device, were employed. Both of these devices were held by Judge Witmer to infringe the plaintiff's patent.

It seems, therefore, entirely clear that the retaining means of the defendant's device is but an equivalent of that of the patent in suit, and that it therefore infringes.

[2] The main contention regarding the plaintiff's lack of title is that the instrument by which it claims to have acquired title from the patentee did not purport to assign the "invention," but only the "application" for the patent. Before discussing this question, however, it seems necessary to consider another, which, although not raised by the parties, is intimately connected with it, and should, I think, receive some attention, because of some difference of opinion among the authorities regarding it. The instrument of assignment upon which the plaintiff bases his title, in so far as the patent in suit is concerned, was executed before the patent issued. It contains no request that the patent issue to the assignee. The patent was issued to the inventor, but the plaintiff claims that the full legal and equitable title to the patent vested automatically in the assignee immediately upon the grant of the patent. Assuming that the language used in the assignment is sufficient to convey the invention and the inchoate right to the patent,

it is entirely clear that this contention is correct, provided the failure to have inserted a request that the patent issued to the assignee does not alter the situation. Gayler v. Wilder, 10 How. 477, 13 L. Ed. 504; Hendrie v. Sayles, 98 U. S. 546, 25 L. Ed. 176. That such a request be contained in such an assignment has been held essential in order to automatically pass to the assignee the legal title to the patent when the latter is issued. Harrison v. Morton, 83 Md. 477, 35 Atl. 99. The same statement is found in Mr. Walker's work on Patents (4th Ed., p. 235). His only authority, however, is Harrison v. Morton. There is also an expression in the opinion of Justice Blatchford in Wright v. Randel (C. C.) 8 Fed. 591, susceptible of bearing the same meaning. In United States Stamping Co. v. Jewett (C. C.) 7 Fed. 869, the same judge, in interpreting the opinion of the Supreme Court in Gayler v. Wilder, supra, used this expression:

"As the assignment was intended to operate upon the perfect legal title which the inventor then had a right to obtain, *because it requested that the patent might issue to the assignee*, there was no sound reason for restraining the assignment to the inchoate interest and requiring a further transfer of the patent."

As opposed to these authorities are the decisions of Judge Noyes, in Hildreth v. Auerbach, 200 Fed. 972 (D. C., S. D. N. Y., 1912), and of Judge Kohlsaat, in Wende v. Horine, 191 Fed. 620 (C. C., N. D. Ill., 1911). In both of those cases the question was directly raised, and it was held not to be essential to the vesting of a legal title automatically in the assignee upon the granting of the patent that the assignment should contain a request that the patent issue to the assignee. The confusion which has arisen seems to be due to the interpretation placed upon the opinion of Chief Justice Taney in Gayler v. Wilder, supra, and particularly because (10 How. page 493, 13 L. Ed. 504) of the following sentence: "The assignment requests that the patent may issue to the assignee." An attempt to show that the interpretation adopted by the first cited authorities is not correct seems unnecessary, both because the reasoning of Judge Noyes in Hildreth v. Auerbach, supra, seems to me eminently satisfactory and sound, and because, as said by Judge Kohlsaat in Wende v. Horine, supra, the decision of the Supreme Court in Railroad Co. v. Trimble, 10 Wall. 367, 19 L. Ed. 948, seems to be irreconcilable with any such interpretation.

[3] It remains to consider, therefore, whether the language used in the instrument of assignment to describe what was thereby transferred was sufficient to convey to the plaintiff the legal title to the patent, when the latter was granted. The assignment of an invention is a contract, and like all other contracts is to be construed so as to carry out the intention of the parties. Nicolson Pavement Co. v. Jenkins, 14 Wall. 452, 20 L. Ed. 777; Hendrie v. Sayles, supra. An inventor of a new and useful improvement is vested with an inchoate right to its exclusive use, which he may perfect and make absolute by proceeding in the manner which the law requires, and when it appears by the language of an assignment, executed before the patent is granted, that the assignment was intended to operate upon the perfect legal title which the inventor then had a lawful right to obtain,

as well as upon the imperfect and inchoate interest which he actually possessed, the instrument will convey to the assignee the legal title to the patent, when the latter is granted. Gayler v. Wilder, supra. It is necessary to examine the assignment in question in the light of these principles. It assigned certain existing patents and a large number of applications for patents, which were then pending in the Patent Office, included in which was the application upon which the letters patent in suit were granted. In the granting clause, after reciting the various patents and applications assigned, appears the following:

"And any and all *issues*, reissues, and extensions of said letters patent, and applications for letters patent, and each of them; also in and for the United States of America any and all inventions and improvements in said letters patent, and each of them described; also any and all rights of action and claims existing at the date hereof under said letters patent, and each of them, for past infringement thereof."

And in the habendum clause, which immediately follows, appears this:

"Said applications, inventions, improvements, and letters patent, and each of them, to be held and enjoyed by said Individual Drinking Cup Company, its successors and assigns, to the full end of the term or terms for which said letters patent, and each of them, are or *may be* granted, respectively, and any and all reissues and extensions thereof, as fully and entirely as the same would have been held and enjoyed by the undersigned, if this assignment had not been made."

Then follows a covenant that the assignor is the owner—

"of each and all of the inventions, improvements, rights, claims and letters patent, and applications for letters patent, hereby sold and assigned."

While he does not, in so many words, assign the invention and improvements described and embraced in the application for letters patent, I think it unquestionable that the intention of the parties was that the same were to be conveyed by that instrument. The words "any and all issues" cannot refer to letters patent already existing, because they had already been issued, and reissues and extensions were separately mentioned. They must refer to "the issues" of patents on applications then pending. Also, in the clause following, to the effect that the "applications, inventions, improvements, and letters patent" were to be held by the assignee to the full end of the term for which "said letters patent and each of them are or *may be* granted," the word "are" refers to the existing letters patent, but the words "may be granted," to be given any effect when read in connection with the words following, must refer to such patents as might be granted on existing applications; for reissues and extensions are also provided for in that clause

I think it is therefore clear that the instrument assigned patents to be granted on the applications then pending and named in the instrument of assignment. When he conveyed the patent to be granted, how can it be said that he did not convey the invention upon which the patent would be based? In addition, the assignor had an inchoate right to the monopoly, which he could secure only through the application and the patent. When he conveyed the application and the

patents to be granted thereon, it seems that it must be held, within the rule above stated, that the assignment was intended to operate upon the legal title which the inventor then had a lawful right to obtain, as well as the imperfect and inchoate interest which he actually possessed. I think, therefore, that the instrument in question automatically conveyed the legal title to the patent when it was granted. It also appears that the parties have placed a practical construction upon this instrument by treating it as having conveyed the legal title to the patent in suit. While such a construction, where the meaning is clear, can be given no consideration, still, where there is doubt as to the proper construction of the instrument, it is entitled to great consideration, and is sometimes considered controlling.

Those who question the title in this case are infringers; neither the parties to the instrument, nor any one claiming under either of them, dispute the effect which the plaintiff claims should be given to the instrument of assignment. The other instruments affecting the patent I do not think need be considered here. It is sufficient to say that, so far as the proofs show, both the legal and equitable title to the invention were in the inventor at the time he executed the assignment to the plaintiff in this case.

My conclusion therefore is that the legal title to the patent is in the plaintiff, and it may therefore maintain this action.

[4] It is urged on behalf of the defendant that because of the questions which have arisen in this case a preliminary injunction should not be awarded, but that the decision of these questions, particularly that of title, should be deferred until a final hearing. The rule which has governed the courts on this point is thus expressed by Judge Hough in Vacuum Cleaner Co. v. Waldorf-Astoria Hotel Co. (C. C.) 198 Fed. 865, as follows:

"Complainant cites and relies upon the Circuit Court decisions of which Fuller v. Gilmore (C. C.) 121 Fed. 129, is the best known. With the doctrine of these cases I fully agree, for it would seem that, where the matters in controversy are confined to an examination of the prior art as revealed in other patents, to the construction of some claim or claims of the patent in suit, or the decisions of questions of title depending upon the meaning of written documents, no reason exists for not deciding the matters in controversy on affidavits and an examination of uncontroverted documents, instead of requiring the parties to present exactly the same matter to the court in lengthy and expensive fashion."

The patent in this case has already been adjudicated. The new evidence affecting its validity can be considered on an application of this kind as thoroughly and satisfactorily as on final hearing, as can also the question of infringement; and the decision of questions affecting the title depends upon the meaning of written instruments which are before the court. There is therefore no good reason for deferring a decision.

The complainant will be awarded a preliminary injunction in the usual form.