## WRIGHT, Jr., *v.* RANDEL and others.

*(Circuit Court, N. D. New York. August 4, 1881.)*

1. EQUITY.
    Between equal equities the law will prevail.

2. LETTERS PATENT—ASSIGNEES—SUPERIOR TITLE.
    *Bona fide* purchasers for value without notice, under an instrument of assignment which was duly recorded, whereby interests are assigned in an unpatented invention and wherein the commissioner is requested to issue the patent to such assignees, as was duly done, can convey a good title to such patent as against prior assignees of a prior patent which was issued to the same inventor, to whom such inventor at the same time assigned interests in new inventions which he had made, of which the invention above referred to was one, the prior instrument of assignment having been executed and recorded first, and the invention, the nature of which was definitely referred to in such prior instrument, having been made before any of such assignments.

3. REV. ST. § 4898, CONSTRUED—RECORDS.
    Section 4898 of the Revised Statutes does not provide for the recording of assignments, grants, and conveyances of interests in patents not yet issued.

4. REV. ST. § 4895, CONSTRUED—CONSTRUCTIVE NOTICE—RECORDS.
    Section 4895 of the Revised Statutes makes no provision for the recording of an assignment of an unpatented invention on which the patent is not to be issued to the assignee; therefore its record is not constructive notice of its contents to one who subsequently deals with a party to it in respect to its subject-matter.

*N. Davenport,* for plaintiff.

*Esek Cowen,* for defendants.

BLATCHFORD, C. J.   On the seventeenth of August, 1875, letters patent No. 166,810 were issued to the defendant William Randel for an "improvement in button-hole attachments for sewing machines." Randel, by an assignment made September 19, 1876, and recorded September 22, 1876, assigned to Oscar Smith and Benjamin H. Downer each an undivided one-third interest in said patent—

"Together with an undivided one-third each of any improvements or new inventions that I have or may produce in button-hole attachments or button-hole machines, and agree to assign interests as stated above, and make application for letters patent for such improvements on machines; * * * and it is a subject of agreement by myself and the said assignees, this date, that we will neither of us sell, assign, or set over to other parties any por-

tion of our interest in said patent, reissues, or new patents in said button-hole attachments or machines that we now have or may have, unless by the written consent of each party now owning the same."

By an assignment made January 31, 1877, and recorded February 9, 1877, and which recited that Randel had assigned to Smith & Downer an undivided one-third interest to each in said patent, "and to any improvements or new invention in button-hole attachments or button-hole sewing machines that the said Randel might make or produce," Randel & Smith assigned to Downer "all our right, title, and interest in and to said inventions, as secured to us by said letters patent and assignment." By an assignment made February 5, 1877, and recorded February 9, 1877, and which recited the contents of said two assignments, Downer assigned to one House "one undivided half of all my right, title, and interest in and to said inventions as secured to me by said letters patent and assignment, and to any improvements or new inventions in button-hole attachments or button-hole sewing machines that the said Randel might make or produce." By an assignment made February 19, 1877, and recorded February 22, 1877, and which recited the contents of said three assignments, Downer and House assigned to the Randel Button-Hole Machine Company "all our right, title, and interest in and to said invention, as secured to us by the said letters patent and assignments." By an assignment made March 7, 1878, and recorded May 31, 1878, and which recited the contents of said prior assignments, and that Lysander Wright, Jr., (the plaintiff in this suit,)—

"Is desirous of obtaining an undivided interest in and to certain improvements and inventions in button-hole attachments made by said William Randel previous to the nineteenth day of September, 1876, and for which a United States patent was issued, bearing date the second day of January, 1877, and numbered 192,008,"

—The said company assigned to said Wright all its right, title, interest, and claim in and to said invention, as set forth in said letters patent No. 192,008, and which bear date January 2, 1877, as set forth in above-mentioned assignments.

On the second of January, 1877, Randel filed in the patent-office an application for a patent for an "improvement in button-hole attachments for sewing machines." On the twenty-eighth of March, 1877, Randel and the defendants John W. Cipperly, John C. Cole, and Theodore E. Haslehurst executed an agreement whereby Randel agreed to assign to the other three (one-third each) a one-half "interest in his invention of an attachment to a sewing machine for mak-

ing button-holes, and all benefits and advantages to be derived therefrom, excepting his interest in a patent issued by the United States, and already assigned to B. H. Downer and Oscar Smith," and, in consideration thereof, the other three agreed "to be to the expense of procuring patents in such countries as may be mutually agreed upon." By an assignment dated May 22, 1877, which recited that Randel had invented an invention in button-hole attachments for sewing machines, an application for a patent for which was filed on or about January 15, 1877, Randel assigned to the said Cipperly, Cole, and Haslehurst each an undivided sixth part of all his right, title, and interest in and to the said invention as set forth in the specification filed with the application, and requested the commissioner of patents to issue the patent jointly to him and the said Cipperly, Cole, and Haslehurst. The patent was issued to the four June 12, 1877. By an assignment dated June 28, 1877, Randel, with the consent of the other three, assigned to Joseph W. Smart all his right, title, and interest in and to said inventions, as secured by said patent No. 192,008. On the twenty-eighth of June, 1877, the said Oscar Smith executed an instrument which recited the contents of the said assignment of September 19, 1876, and assigned to said Cipperly, Cole, and Haslehurst all his right, title, and interest, of whatever nature, remaining or reserved to him in said instrument. On the seventh of July, 1877, the Randel Button-Hole Machine Company served on Cipperly, Cole, and Haslehurst a written notice which recited the said assignments of September 19, 1876, and January 31, 1877, and that the Randel Button-Hole Machine Company, by assignments executed by said Downer and said House, had become the sole owner of said patent No. 192,008, and of all the inventions transferred by the said assignments, and that Randel had no right which he could assign in said patent to said Cipperly, Cole, and Haslehurst, and required them to assign to said company all their interest in said patent No. 192,008, and all the interest they had acquired since September 19, 1876, by any and all assignments from said Randel for any patents issued to Randel, or to him and them, as his assignees, for any button-hole attachments for sewing machines, or for any improvements in such attachments. In December, 1877, Cipperly, Cole, Haslehurst, and Smart, and one Huntington, formed a corporation under the laws of New York called "The Empire Button-Hole Machine Company, Limited," which is one of the defendants in this suit. By an assignment dated January 4,

1878, which recited the said assignment by Randel to Smart, the said Cipperly, Cole, Haslehurst, and Smart assigned to the said Empire Button-Hole Machine Company, Limited, all their right, title, and interest in and to said inventions, as secured to them by said patent. No. 192,008 and said assignment.

The bill in this case sets forth that the inventions afterwards patented by patent No. 192,008 were invented and reduced to practice by Randel on or about August 16, 1876, or prior thereto; and that the said assignments by Randel to Smith and Downer, and by Randel and Smith to Downer, were made and recorded. But it does not state when they were recorded, nor does it base any cause of action on any notice claimed to have been given by the recording. Its cause of action is based on actual knowledge by the co-defendants, with Randel, of the contents of the said prior assignments by him, and on want of the consideration for the assignments from Randel under which the co-defendants with him claim.

The bill avers that the expenses of the application for patent No. 192,008 were paid by Smith and Downer; that prior to May 22, 1877, Cipperly, Cole, and Haslehurst, each of them, knew of the contents of said assignments of September 19, 1876, and January 31, 1877; that the assignment to them was made without any valuable consideration, and for the purpose of defrauding the prior assignees of Randel of their interest in said invention, and the patent which might issue for the same; that said patent was issued without the consent or knowledge of the Randel Button-Hole Machine Company, and in violation of their rights; that the assignment of June 28, 1877, was without the consent or knowledge of said company; that Smart knew of the contents of said assignments of September 19, 1876, and January 31, 1877; that the assignment to Smart was made without any valuable consideration, and for the purpose of defrauding said company; that the Empire Company knew of the said assignments of September 19, 1876, and January 31, 1877; that Cole was the president, and Cipperly, Haslehurst, and Smart were directors of it; that Randel was and is interested in and connected with it; that all said parties, both officers and directors of said company, knew of the said prior actions and doings of Randel; that said assignment to the Empire Company was for the purpose of defrauding the Randel Company, and without any valuable consideration; that after said patent No. 192,008 was issued, the Randel Company requested Randel to assign to it the said patent, but he refused, and the same request was made of his assignees, and they refused; and

that the plaintiff, after he acquired his title, requested said Randel and his said assignees to assign said patent to the plaintiff, but he refused. The prayer of the bill is that the title to said patent No. 192,008 may be decreed to belong to the plaintiff; that the defendants assign it to the plaintiff; and that Randel assign it to the plaintiff in accordance with the terms of said assignments of September 19, 1876, and January 31, 1877.

The answer admits that the invention of Randel, patented in No. 192,008, was made and perfected on August 16, 1876, or prior thereto. It denies that Cipperly, Cole, and Haslehurst, or either of them, at and prior to the date of the assignment of said invention to them, had any knowledge of said assignments and the contents thereof, made September 19, 1876, and January 31, 1877. It avers that the assignment to them was for a full and valuable consideration paid by them, and that the assignment to Smart was for a full and valuable consideration paid by him to Randel. It denies that at the time of said assignment to Smart he had any knowledge of said prior assignments and the contents thereof; and it denies that at the time of said assignment to the Empire Company it had, through its officers, any knowledge of the prior acts and doings of Randel in relation to said previous assignments made by him. It admits that previous to the date of said assignment to the Empire Company Cipperly, Cole, and Haslehurst had heard that some claim was made by Downer or his assignees to the invention secured by said patent, and understood it to be by virtue of an assignment by said Randel of future inventions. It avers that the Empire Company paid its assignees a full and valuable consideration for their assignment.

It is proved that Cipperly, Cole, Haslehurst, and Smart paid a valuable consideration for what was assigned to them. No attempt is made to show actual notice to any one but Haslehurst of the prior agreement by Randel in respect to the sale of improvements.

The answer admits that the invention of Randel, patented June 12, 1877, was made and perfected "on the sixteenth of August, 1876, or prior thereto, as is alleged in the said complaint." The allegation of the bill is that the improvements covered by the patent afterwards issued June 12, 1877, were "invented and reduced to practice" on or about August 16, 1876, or prior thereto. The assignment of September 19, 1876, besides conveying to Smith and Downer each an undivided one-third interest in patent No. 166,810, conveyed to them "an undivided one-third each of any improvements or new inventions

that I have or may produce in button-hole attachments or button-hole machines, and agree to assign interests, as stated above, and make application for letters patent for such improvements or machines, the same to be held and·enjoyed" by the said Smith and Downer. Then the assignment, which is signed by Randel alone, goes on to say:

"And it is a subject of agreement by myself and the said assignees, this date, that we will neither of us sell, assign, or set over to other parties any portion of our interest in said patent reissues, or new patents, in said button-hole attachments or machines, that we now have or may have, unless by the written consent of each party now owning the same."

Although this assignment does not refer specifically to any particular improvements which Randel had already made, and had not patented, yet the use of the words "that I have or may produce" shows that the existence of improvements which he had made and not yet patented was before the minds of himself and Smith and Downer when this assignment was made, on the nineteenth of September, 1876. Randel testifies that the first machine, embracing the invention described in patent No. 192,008, was made in August, 1876. Randel agreed,· in said assignment, to apply for patents "for such improvements or machines," and also agreed not to assign to other parties any portion of his interest in "new patents in said button-hole attachments or machines" that he might have, without the written consent of Smith and Downer. The "new patents" referred to are patents for such improvements. They were to be held by Smith and Downer, each an undivided third thereof. This assignment was recorded in the patent-office September 22, 1876.

It is very clear that the legal title of patent No. 192,008 is in the Empire Company. The patent was properly issued to Randel, jointly with Cipperly, Cole, and Haslehurst, under the assignment of May 22, 1877, which contained a request to that effect by Randel. The statute (section 4895, Rev. St.) provides that "patents may be granted and issued, or reissued, to the assignee of the inventor or discoverer, but the· assignment must· first be entered of record in the patent-office." Under the decision in *Gayler* v. *Wilder*, 10 How. 477, the legal title to the patent would, under said assignment of May 22, 1877, have been in Randel and the other three, jointly, even if the patent had afterwards been issued to Randel alone.

The question arises, then, whether Downer acquired an equitable title, as against Randel, to the improvements which Randel had so made and perfected prior to **August 16, 1876.** The assignment of

September 19, 1876, was broad enough, in its terms, to carry to Smith and Downer each an undivided third of "any improvements or new inventions" which Randel had made prior to that time "in button-hole attachments or button-hole machines." He had, admittedly, before that time, made the inventions embraced in the subsequent patent, No. 192,008. The agreement, in the instrument, "to assign instruments as stated above," must be read in connection with the prior absolute assignment, in the same instrument, of an undivided one-third interest to each of any past unpatented inventions in button-hole attachments or button-hole machines, and is an agreement to assign by further papers anything needed either to complete the equitable title conveyed, or to perfect legal titles to the patents when they should be issued. The further agreement in the instrument excluding all parties from assigning to any one any interest in any patent to be applied for thereafter and obtained thereafter for any improvements which Randel had already made in button-hole attachments or button-hole machines, is consistent with the conveyance of such equitable title. The instrument provided that Randel should apply for the new patents for the past improvements, but it did not, while assigning the improvements, provide that the new patents should be issued to Randel and the assignees jointly. Out of this all the trouble has arisen.

The assignment of January 31, 1877, by Randel and Smith to Downer recites patent No. 166,810, and recites the assignment of September 19, 1876, as having conveyed to Smith and Downer an undivided one-third interest to each in that patent, and in "any improvement or new invention in button-hole attachments or button-hole sewing machines that the said Randel might make or produce." It does not add "had produced," which would have been a correct recital, but it refers to the paper by date, and as having been recorded in the patent-office, in a specified book and page of transfers of patents. It then recites that Downer "is desirous of obtaining the exclusive right, and all the right, title, and interest, in and to the letters patent, and to the rights transferred by the said assignments." The defendants contend that "the letters patent" mean only letters patent No. 166,810, and that there were no rights transferred to Randel by the assignment of September 19, 1876. The instrument of January 31, 1877, then goes on to say that Randel and Smith assign to Downer "all our right, title, and interest in and to said inventions, as secured to us by said letters patent and assignment." The defendants contend that by that paper Randel did not assign to Downer the

one-third interest in the as yet unpatented improvements, which he had not assigned, by the paper of September 19, 1876, inasmuch as there were no rights transferred to Randel by that paper, and there was nothing secured to Randel by that paper; and that, therefore, by that paper, Randel assigned nothing but his one-third remaining interest in patent No. 166,810. But the paper has a wider scope. It refers to the prior instrument by its date and place of record, and identifies it as conveying something more than an interest in patent No. 166,810. The expression in regard to Downer is that he desires to obtain "the exclusive right, and all the right, title, and interest,"—that is, the whole title, exclusive of every one else,—in and to the letters patent and rights transferred by the prior paper. It does not say "the said letters patent," confining it to No. 166,810, but it says "the letters patent and rights transferred by the prior paper." Now, in substance, two-thirds of any new patent for any improvements already made were transferred by the prior paper. Those were the rights that were transferred by the prior paper.

The second paper was framed to transfer to Downer "the exclusive right, and all the right, title, and interest," in such new patent, as well as in the old patent, of all which he before had but an undivided one-third. So, in the granting part, when the paper conveys "all the right, title, and interest of Randel and Smith in and to said inventions, as secured to us by said letters patent and assignment," it means all their interest "in said inventions;" that is, the inventions "transferred by," or the subject of transfer in, the prior assignment. The words "as secured to us by said letters patent" mean "as secured to us by the letters patent transferred to us by the prior assignment," which includes the new patent. The paper is unskilfully drawn, but is capable of such construction, and it is in the interest of fair dealing that it should be so construed, in a court of equity, in favor of those who are prior in time and have acted in good faith.

Downer, being thus the equitable owner of the inventions which Randel had so made and had not patented, conveyed to House the undivided half of all the rights which he had so received, and Downer and House conveyed to the Randel Button-Hole Machine Company all of the rights which either of them had so received, which they possessed. That company thus became the owner of the improvements embraced in patent No. 192,008, and the owner of the equitable title to that patent, as against Randel, before the co-defendants with Randel acquired any interest in said improvements. The omis-

sion of a request by Randel to the patent-office to issue the patent to Smith and Downer jointly with himself, or to Downer alone, enabled Randel to make a second transfer of the invention, and to secure the issuing of the patent as it was issued. The Randel Company had no legal title to the patent when it was issued, and the most it could do was to claim and assert an equitable title. *Gayler v. Wilder*, 10 How. 477; *Clum v. Brewer*, 2 Curtis, 506. That title was prior in time to the legal title obtained by the co-defendants with Randel. Can it be asserted as superior in right by reason of any notice, constructive or actual, with which the co-defendants with Randel are chargeable?

The assignments of September 19, 1876, and January 31, 1877, were not instruments the recording of which was provided for by section 4898 of the Revised Statutes, which is confined to assignments, grants, and conveyances of interests in patents after they are issued. Fees are prescribed by section 4934 for recording "every assignment, agreement, power of attorney, or other paper;" but it does not follow from this that the record of every paper which may happen to be recorded is to be taken as constructive notice of its contents to every person subsequently dealing with a party to it in respect to its subject-matter. The record of an instrument is not constructive notice to a subsequent purchaser unless the statute requires the instrument to be recorded. No assignment of an unpatented invention is required by section 4895 to be recorded, unless it is an assignment on which a patent is to be issued to the assignee; and, in such case, the invention must be so identified in the assignment—by a reference to a specification, or an application, or otherwise—that there can be no mistake as to what particular invention is intended. The two assignments in question, so far as they relate to unpatented inventions of Randel, already made, do not fall within section 4895 in either of the above particulars, and it must be held that the record of them was not constructive notice to the subsequent purchasers of the prior assignment by Randel of said unpatented inventions.

As to actual notice, the burden is on the plaintiff to establish it. There is not sufficient proof to show that Haslehurst had notice before he became a *bona fide* purchaser for a valuable consideration. The contract was made March 28, 1877, expressing, as a consideration, that Cipperly and the two others were to pay the expense of procuring patents. They paid $350 towards procuring foreign patents April 18, 1877, and afterwards paid more for that purpose.

The full assignment was made May 22, 1877. The assignment by Smith to Cipperly and the two others was made June. 28, 1877, after the patent was issued. The assignment of Randel to Cipperly and the two others was to them individually, and not as copartners. Haslehurst acted for himself and the other two for themselves. Downer's testimony as to what passed between him and Haslehurst does not make out notice, and Downer is contradicted directly as to what he said by Haslehurst. Phelps' testimony as to what Randel said to Haslehurst is contradicted by Randel, and it is wholly improbable that Randel, who was trying to effect a sale to Haslehurst of an invention which he had before sold to another, would inform Haslehurst of such prior sale. Haslehurst was informed by Randel, before purchasing, that the patent papers had been drawn by Mr. Lowe, and he applied to Mr. Lowe and was informed by him that he had drawn an assignment of the patent that had been issued, but had drawn no assignment of the pending patent, and that Randel was the owner, so far as he knew. All this tended to show that the invention had not been assigned. There is nothing to show any notice to Cipperly, Cole, or Smart. The title of the Empire Company is sustained by the title of the prior *bona fide* purchasers for a valuable consideration without notice, although that company was formed after the notice of July 7, 1877, had been served on three of the persons who afterwards became directors of it.

The bill is dismissed, with costs.