# WALTER H. HARRISON *vs.* FRANKLIN J. MOR-TON.

*Contract for Sale of Patent—Agreement Signed, but Enforceable at Option of One Party—Evidence—Delivery of Sealed Contract—Assignment of Application for Patent—Equitable Title to Patent —Failure of Consideration—Minute-Books of Corporation.*

In an action on a contract under seal where *non est factum* is pleaded, evidence is admissible to show that, though the contract was signed by both parties, it was never delivered, and that it was the understanding of the parties, as shown by conversations before signing, that the contract was not to become operative until the defendant should so elect. Such evidence does not vary the terms of the agreement, but shows that it never existed as a binding obligation.

In such action evidence is admissible on the part of the defendant to show the circumstances under which he exercised his alleged right to avoid the contract sued on.

An agreement was signed by plaintiff and defendant by which defendant agreed to buy a certain patent right owned by plaintiff under assignments from the inventor of his pending application in the Patent Office, and defendant agreed to pay for the same within ten days after the issue of letters patent. In an action on the contract plaintiff alleged the issue of the patent to the inventor, and the assignment of the same by the plaintiff to the defendant, acceptance by him and refusal to comply with the agreement. Defendant pleaded *non est factum* and that plaintiff had no valid title to the patent. *Held,*

1st. That the burden was upon the plaintiff to prove delivery of the contract sued on.

2nd. That if it was agreed between the parties that the contract in duplicate should be signed by the defendant and kept in his possession and not be put in force, except at his own option, and that such option was not exercised, then the plaintiff is not entitled to recover.

Plaintiff sued for a breach of a contract by defendant to buy a certain patent owned by plaintiff, under assignment from the inventor, of a pending application. This assignment, although recorded in the Patent Office, did not contain a request to the Commissioner of Patents to issue letters to the assignee, as required by the rules of the office in order to vest the record title in the assignee. Letters patent were afterwards issued to the inventor. This inventor, prior to his assignment to the plaintiff, had agreed to sell the patent to a corporation. *Held,* that the plaintiff took from the inventor and could

only assign to the defendant an equitable title, and since, under the contract between the inventor and the corporation, the latter also acquired an equitable title, the title offered by the plaintiff to the defendant was subject to the other equity, whether plaintiff had notice of the contract with the corporation or not, and that consequently plaintiff had not complied with his undertaking.

The minute-books of a corporation are admissible to show a contract between an inventor and the corporation by which a sale of the former's patent rights was agreed upon, the loss being shown of the original assignment to the corporation, a copy of which was contained in the minutes, and a fruitless search for the same.

The rule of the Patent Office that a patent will not be issued to the assignee of an application, unless the assignment contains a request to that effect, is binding upon persons dealing with that office.

The assignment of a right to obtain letters patent which does not contain a request to the Commissioner to issue the patent in the name of the assignee conveys only an equitable title.

An equitable title is only a right to go into equity to have the legal estate conveyed, and the purchaser of an equity takes the same subject to every clog that may lie on it, whether he has notice or not.

Appeal from the Baltimore City Court. The appellant sued for breach of a contract, which bore date on December 8, 1894, and purported to have been executed in duplicate on that day. By its terms, the appellant was to assign to the appellee a certain invention for a machine to make barrels and kegs, for which application had been made in the Patent Office by the inventor, one Henry Campbell, and of which said invention the appellant declared himself to be the owner, by assignment from Campbell. For the sale and conveyance to him of all rights under said patent, the appellee, by the terms of the alleged contract, was to pay the appellant $100,000 in cash within ten days after the issuing of letters patent for the invention by the United States, to transfer and deliver to the appellant in addition 2,000 full-paid and non-assessable shares of stock of the par value of $100 per share of the capital stock of a corporation to be incorporated and organized by the appellee with a capital stock of $500,000, and also to pay to the appellant a sum equal to 40 per cent. of the gross royalties upon the sales of the patented machines under patents issued by any government.

The defendant pleaded: First. *Non est factum.* Second. That the signature of the appellee to the alleged agreement was procured by the fraud of the appellant. Third. That the signature of the appellee was procured by the undue influence of the appellant.

He also filed three supplemental pleas on equitable grounds. 1st. That there was no consideration for the alleged agreement. 2d. That at the date of the alleged agreement, the appellant was not the owner of, and had no valid title to the machine, method and device mentioned in the declaration. 3d. That at the time of the alleged assignment of the patent, the appellant was not the owner of, and had not a valid title to the said patent.

The defendant also filed a plea of set-off, and upon demand for a bill of particulars of such set-off filed a bill of particulars amounting to $31,791.52.

The case was tried before DOBLER; J., sitting as Judge, without a jury, and resulted in a judgment in favor of the defendant against the plaintiff for $35,091.65.

At the trial seven exceptions were taken by the appellant. The first six to rulings of the Court upon questions of evidence, and the seventh to the rulings of the Court on the prayers offered by the respective parties and to an instruction given by the Court.

At the trial defendant was asked the following question: " Now, Mr. Morton, passing from that for the time being, so as not to detain the Court, two papers, two duplicates of one paper, dated the 8th of December, 1894, have been offered in evidence, the general purport of which is an agreement on your part to purchase certain patent devices for $100,000, and these are dated December 8th, 1894. Now, I want to ask you, whether in the early part of 1894, before December 8th, 1894, you had had any conversation with Harrison and with Campbell with reference to that device, that patent, and, if so, what did you agree and on what terms in connection with that patent device ? " This question was objected to by the plaintiff, but the Court overruled

the objection and allowed the question to be answered, and this ruling constitutes the ground for the first exception.

In the fourth exception the question objected to was as follows : " Now, prior to the 8th of December, what had been the only talk that you had had with Harrison or Campbell, or either of them, with reference to this device ; what had you been asked to do by them, and what had you said that you would do ? Now, first, what had you been asked to do ? "

In the second exception the question objected to was as follows : " Now, Mr. Morton, there has been offered evidence by us this morning of an arrangement by which you advanced $2,500 to enable Mr. Harrison to exploit this North Carolina gold mine. What representations, if any, did Mr. Harrison make to you about that gold mine in connection with money he owed you on other occasions ?"

The third and fifth exceptions are practically the same. The plaintiff objected to the admissibility of the defendant's cash-book, but the Court admitted it under the following circumstances : The plaintiff had offered evidence by Henry Campbell to show that $1,500 had been paid by Morton to Harrison on December 22d, 1894, on account of the contract of December 8th, 1894. The defendant was engaged in proving that no payment was made by Morton to Harrison of $1,500 on account of this contract on December 22d, 1894, or any other time. In order to prove this the defendant proved that he kept a cash-book into which he entered in his own handwriting all his receipts and disbursements. That his course of business was to enter every receipt and every disbursement in this cash-book. Defendant also offered his bank-book so as to show the agreement between the balances as stated in the cash-book. It appeared from these books, the defendant testifying and using them as part of his testimony, that he did not pay any money to Harrison on December 22d, except a check of $775, which was for different matter, and for which there was a separate receipt.

In the sixth exception the plaintiff objected to the admission of the minutes of the Campbell Barrel Company, which showed the acceptance of a proposition from Henry Campbell to subscribe for $90,000 of stock, and to pay for the same in property, to-wit : By the assignment of certain inventions, both present and future. The proof was offered to support the defence that there was no consideration for the alleged agreement of December 8th, 1894, as Harrison had no title to the patent he pretended to assign.

The plaintiff offered the following prayers :

*Plaintiff's 1st Prayer.*—The plaintiff, by his counsel, prays the Court to rule that if it shall find from the evidence that the contract between the plaintiff and defendant, dated December 8th, 1894, and read in evidence, was signed and sealed by the plaintiff and defendant, and left in the possession of the defendant as a complete and operative instrument according to its terms, and that in accordance with said contract, shortly after the execution thereof, the plaintiff executed to the defendant the assignment read in evidence of his right to the invention therein mentioned, on which application for a patent was then pending, and that defendant afterwards employed and paid patent attorneys to procure for him the patent from the Government of the United States, and from the governments of other countries ; and if the Court shall further find, that the said application for a patent was allowed by the. Government of the United States, and subsequently that letters patent for said invention were granted, bearing date January 22nd, 1895, as read in evidence, and that the plaintiff, at the time of the execution of said agreement with the defendant had no knowledge or notice of the agreement between Henry Campbell and the Campbell Barrel Company, offered in evidence, then the plaintiff is entitled to recover.

("*And that there is no evidence that the plaintiff had any knowledge or notice of said agreement between said Campbell and said Campbell Barrel Company.*") (Rejected as offered, but granted as modified by omitting the words in italics.)

*Plaintiff's 2nd Prayer.*—The plaintiff, by his counsel, prays the Court to rule that the defendant has offered no evidence legally sufficient to show that the contract set out in the declaration was procured by the plaintiff from the defendant by fraud, or by undue influence.   (Conceded).

*Plaintiff's 3rd Prayer.*—The plaintiff, by his counsel, prays the Court to rule that the defendant has offered no evidence legally sufficient to show that there was no consideration for the agreement set out in the declaration.   (Rejected).

*Plaintiff's 4th Prayer.*—The plaintiff prays the Court to rule that if the Court shall find that on the 11th day of September, 1894, Henry Campbell made to the plaintiff the assignment of one-half interest in his then pending application to the United States Patent Office for a patent for the invention in said assignment mentioned, and subsequently, on or about the 26th of November, 1894, made to the plaintiff a further assignment of all his interest in his said pending application and to the patent thereon, whenever the same should thereafter be granted; then, by virtue of said two assignments, the plaintiff acquired an inchoate title to said invention and to the patent thereon, when the same should thereafter be granted, which title it was competent for the plaintiff to sell, assign and dispose of; and if the Court shall further find that on or about the 10th day of December, 1894, the plaintiff executed to the defendant the assignment read in the evidence and dated the 8th day of December, 1894, for the consideration therein mentioned, and that subsequently, on or about the 22nd day of January, 1895, a patent was issued by the United States in the name of said Henry Campbell, for the invention described in said several assignments from said Campbell to the plaintiff and from the plaintiff to the defendant, then the defendant, by virtue of said letters patent, acquired a valid title to and became the owner of said patent, and said assignment from the plaintiff to the defendant, bearing date the 8th day of December, 1894, was supported by a good and sufficient consideration, and the plaintiff is entitled to recover upon the contracts set

out in the declaration, provided the Court, sitting as a jury, shall find that the said contract was signed and sealed by the plaintiff and the defendant, and was designed by them to be an operative instrument according to its terms ; and provided further, that at that time of the execution of said contract, the plaintiff had no knowledge or notice of the agreement between Henry Campbell and the Campbell Barrel Company, bearing date the —— day of January, 1892, and offered in evidence by the defendant, and that there is no evidence legally sufficient to show that the plaintiff had any such knowledge or notice of said agreement. (Rejected).

*Plaintiff's 5th Prayer.*—That the agreement of January, 1892, between Henry Campbell and the Campbell Barrel Company, offered in evidence by the defendant, is no defence to this action, if the Court shall find that by the true construction of said agreement, the invention and device described in the contract set out in the declaration, is not embraced within said agreement. (Granted).

And the defendant offered the two following prayers :

*Defendant's 1st Prayer.*—The defendant asks the Court to rule as a matter of law that upon the pleadings of the case the burden is upon the plaintiff to prove the delivery of the sealed instrument sued on, and if the Court, sitting as a jury, finds that the paper sued on never was delivered, the verdict must be for the defendant. (Granted).

*Defendant's 2nd Prayer.*—If the Court, sitting as a jury, shall find that when the paper sued on was presented by the plaintiff to the defendant for the latter's signature, with the request that he would sign it, the defendant declined so to do, as the terms of such papers did not correspond with any agreement made or talked of between the plaintiff and defendant, and that thereupon it was agreed between them, that the papers in duplicate should be signed by the defendant, and both kept in his possession, and should not be of any force, and should belong to the defendant until he chose to put them in force, and that in pursuance of this agreement they were then signed by the defendant and always

afterwards kept in his possession until produced at the trial of this cause, on notice, and that at no time after the signing of said papers did the defendant ever exercise his option of putting into force, but on the contrary, subsequently thereto, exercised his option by declining to recognize them as in force, then the verdict shall be for the defendant. (Granted).

And in lieu of the plaintiff's fourth prayer the Court submitted the following instructions :

If the Court shall find from the evidence that the plaintiff acquired the assignment from Henry Campbell, dated the 11th day of September, 1894, and November 26th, 1894, offered in evidence, upon the consideration mentioned by the said Henry Campbell, in his testimony, and without knowledge or notice of the agreement between said Henry Campbell and the Campbell Barrel Company, dated the — day of January, 1892, offered in evidence by the defendant ; and it shall further find that the contract set forth in the declaration in this cause was designed by the plaintiff and defendant to be an operative instrument according to its terms, and that the plaintiff executed to the defendant, on or about the 10th day of December, 1894, the assignment read in evidence, dated the 8th day of December, 1894, for the consideration therein mentioned, and that subsequently a patent was issued by the United States in the name of said Henry Campbell, for the invention described in said several assignment from said Campbell to the plaintiff, and from the plaintiff to the defendant, then the defendant, by virtue of said letters patent, acquired a valid title to and became the owner of said patent, and the plaintiff is entitled to recover in this action, there being no evidence to show that the said Campbell Barrel Company has claimed any interest in said patent. (Granted by the Court).

And the Court granted the first and second prayers of the defendant, and overruled the plaintiff's special exception to the defendant's second prayer.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, PAGE, BOYD and RUSSUM, JJ.

*Wm. Pinkney Whyte* and *John P. Poe* (with whom were *William A. Fisher* and *Walter H. Harrison, Jr.*, on the brief), for the appellant.

A brief reference to the pleadings and to some of the testimony will be necessary, in order to give a clear understanding of the question presented by the sixth exception. In his second and third supplemental pleas on equitable grounds, the defendant averred that the plaintiff was not the owner of and had no valid title to the patented machine in question, nor to the patent issued therefor. At the trial it was proved that on the 11th day of September, 1894, Henry Campbell made to the plaintiff an assignment of a one-half interest in his then pending application to the United States Patent Office for a patent for the invention mentioned in said assignment, and that afterwards, on or about the 26th of November, 1894, he made to the plaintiff a further assignment of all his interest in his said pending application and in and to the patent thereon, whenever the same should thereafter be granted. On the 8th day of December, 1894, the agreement sued on was executed, and on the 10th of December, 1894, the plaintiff executed to the defendant, and the defendant accepted, an assignment dated the 8th day of December, 1894, of all the plaintiff's interest in said machine and patent. The patent was allowed by the United States Patent Office in December, 1894, and on the 22d day of January, 1895, a patent was issued by the United States *in the name of said Henry Campbell* for the invention described in the two assignments from said Campbell to the plaintiff, and from the plaintiff to the defendant.

The defendant, for the purpose of sustaining the issue joined on said second and third supplemental pleas on equitable grounds, proposed to prove that in January, 1892, said Henry Campbell, for the alleged consideration of $90,000, in capital stock of the "Campbell Barrel Machine Company of Baltimore City," offered to sell certain inventions mentioned in his written proposition to that company for barrel and keg machines; that his proposition was ac-

cepted by said Campbell Barrel Machine Company, and that the machine sold by him on September 11th, 1894, and November 26, 1894, and the letters patent for which he had applied, and which were pending at the time of said sale to the plaintiff, were covered by the said sale made by him in January, 1892, to the said Campbell Barrel Company. In order to prove this alleged sale by Campbell to the Campbell Barrel Machine Company, the defendant offered the book of minutes of said Campbell Barrel Machine Company, showing the proceedings held at a special meeting of the shareholders on January 9th, 1892, at which his proposition to make said sale to said company was presented and accepted. The plaintiff objected to the admission of said minutes, but the Court overruled his objection and allowed the minutes to be read in evidence.

This testimony was inadmissible, first, because the original proposition of said Henry Campbell to the Campbell Barrel Machine Company was not produced, nor its absence sufficiently accounted for, the minutes offered in evidence containing nothing but an alleged copy of his said proposition ; secondly, because even if such secondary evidence of his proposition was admissible because of the failure after proper search to find the original, the alleged sale itself was not admissible to impeach the title of the plaintiff as a subsequent *bona fide* purchaser from said Campbell for value without notice. 1st. No sufficient foundation for the secondary evidence was laid. In view of the important character of the original alleged to have been lost, a more thorough search for it should have been shown to have been made. The authorities are clear and full on this point. 2d. The alleged sale to the Campbell Barrel Machine Company was not recorded in the Patent Office. The assignment from him to said company, which was recorded, did not *profess* to cover any improvements which he might thereafter make to the said machine or in the principle or process claimed by him ; nor did the defendant propose to follow the testimony up by evidence of actual notice to the

plaintiff, of said alleged assignment by Campbell to the
Campbell Barrell Company. This ruling of the Court, it
is respectfully submitted, was altogether erroneous, and in-
asmuch as the evidence which the Court admitted tended
to sustain the second and third supplemental pleas on equit-
able grounds of the defendant, and to show that the *defend-
ant* did not acquire from the plaintiff a valid title to the
machine and to the letters patent therefor, because the plain-
tiff himself had not acquired a valid title from said Henry
Campbell, the ruling was manifestly most prejudicial to the
plaintiff, and calls for a reversal of the judgment.

Could the Campbell Barrel Company have filed a bill for
specific performance of the alleged agreement by Campbell
and by injunction have restrained him and Harrison from
assigning the letters patent to Morton ? Clearly not. Har-
rison must have had notice of the previous agreement, if
any. *N. Y. P. Bag Co.* v. *Union B. P. Co.*, 32 Fed. Rep.
787. Of course, the title of the equitable purchaser must
be protected. *Whitney* v. *Purr*, 115 Illinois, 293. The
agreement would only be good against those who purchase
with notice. *Con. Windmill Co.* v. *Empire W. Co.*, 8
Blatchford, 298 ; *Consol. Elec. Co.* v. *Edison Co.*, 25 Fed.
Rep. 720 ; *Light Co.* v. *Light Co.*, 34 Fed. Rep. 335 ; *Pon-
tiac Knit Boot Co.* v. *Mun. Shoe Co.*, 31 Fed Rep. 286. As
between the right of a person holding a contract for such
an interest and the right of a *bona fide* holder or purchaser
for a valuable consideration and *without notice*, the latter
must prevail. The defendant must deny that the plaintiff
is a *bona fide* purchaser. *Gibson* v. *Cook*, 8 Blatchford,
144.

The plaintiff's third prayer asked the Court to rule " that
the defendant has offered no evidence legally sufficient to
show that there was no consideration for the agreement set
out in the declaration." The agreement being under seal,
necessarily imported a consideration, which, upon the issue
joined on the defendant's first supplemental plea on equit-
able grounds, it was incumbent upon the defendant to dis-

prove, there being confessedly no evidence of fraud or undue influence in procuring the execution of the agreement. The plaintiff, so far as the present defence is concerned, was entitled to recover, unless the defendant supported, by competent evidence, the issue raised by him that there was no consideration.    If our contention in regard to the validity of the plaintiff's title be correct, as we have endeavored to show that it is, the assignment of the machine and of the letters patent therefor, were a sufficient legal consideration, and accordingly the Court erred in rejecting this third prayer of the plaintiff.

The Court erred in rejecting the plaintiff's fourth prayer and in granting in lieu thereof the instruction prepared by the Court as a substitute for it.    The plaintiff was entitled to a distinct instruction that there was no evidence legally sufficient to show that he had any knowledge or notice of the alleged agreement of January, 1892, between Henry Campbell, his assignor, and the Campbell Barrel Machine Company, and the Court erred in rejecting the plaintiff's fourth prayer, which contained this statement, and in substituting for it the Court's own instruction, which left to the Court to be found as matter of fact, whether the plaintiff had any knowledge or notice of said agreement of January, 1892, between Campbell and the Campbell Barrel Machine Company, when he made the agreement sued on.    There being no evidence that he had any such knowledge or notice, it was clearly erroneous to submit that question to be passed upon by the Court sitting as a jury.    This is the material difference between the plaintiff's fourth prayer and the Court's instruction granted as a substitute for it, and for this error the plaintiff asks a reversal.

The conduct of the defendant after the execution of the agreement sued on—his recognition of the contract as an existing outstanding agreement between him and the plaintiff—his employment of an attorney to procure the patent rights in this country and from foreign governments—his payment of the fees necessary for such purpose—his recog-

nition of the assignment of the patent right made to him by
the plaintiff—his assertion of ownership of the patent and of
the patented article—his declarations to the plaintiff's wit-
nesses that he had made the contract, and his whole con-
duct after its execution, absolutely repel the theory at-
tempted to be set up in this second prayer.　With the aban-
donment of the distinct allegation that the execution of the
agreement had been procured by fraud and undue influence,
this new ground of defence absolutely fails.　Full knowl-
edge of the contents of an instrument deliberately signed
and sealed will be imputed to a party whose mental capa-
city is not disputed, and when, as here, after alleging that he
was induced to sign it by fraud and undue influence, he
abandons such defence, he cannot be permitted to set up a
defence not only inconsistent with such allgations, but not
raised upon the pleadings.

*Bernard Carter* and *Edgar H. Gans* (with whom was
*Henry Stockbridge, Jr.*, on the brief), for the appellee.

The correctness of the defendant's prayers we do not think
can be seriously questioned.　The principles of law asserted
in them are abundantly established by authority.　We need
only to refer to *Edelin* v. *Saunders*, 8 Md. 129 ; *Wadsworth*
v. *Warren*, 12 Wallace, 307.　The only point upon which
any observation is necessary is made by the special excep-
tion to the second prayer.　By this exception the plaintiff
contends that there was no evidence in the case legally suffi-
cient to show : (1) That there was an agreement that the
contract sued on should not be of any force and should be-
long to the defendant until he chose to put them in force,
and (2) that the defendant exercised his option of declining
to put them in force.　There is no doubt but that the evi-
dence fully proves both of these facts.

The plaintiff, by his prayers, asked the Court to declare
that if the Court, sitting as a jury, should find :　1. That
the instrument of December 8th, 1894, was intended as an
operative contract ; and 2, that the plaintiff purchased the

invention in suit from Campbell for value without notice of the prior agreement between Campbell and the Campbell Barrell Co., then the plaintiff was entitled to recover.

To this extent the Court below agreed with the contentions of law of the plaintiff by granting the first prayer as modified, and by submitting an instruction of its own in lieu of the plaintiff's fourth prayer. But the plaintiff's prayers contained another element with which the Court below did not agree. The plaintiff contended in the first, third and fourth prayers that there was no evidence legally sufficient to show that the plaintiff had any knowledge or notice of the agreement between Campbell and the Campbell Barrel Co. This is the sole point in the seventh exception. The plaintiff claims to be a *bona fide* purchaser of this invention for value and without notice of the antecedent equity of the Campbell Barrel Company. The defendant claims that the Campbell Barrel Co., by its agreement with Campbell, was the equitable owner of this invention ; and, when Campbell undertook afterwards to sell to Harrison, he had nothing to sell, and Harrison having acquired no title, could assign nothing to Morton.

The patent, when issued, was issued in the name of Henry Campbell. Now, the legal effect of an assignment of the application for a patent, when this request to the Commissioner of Patents is omitted, is to vest only *an equitable title to the invention* in the assignee. " An assignment before patent not requesting the issue to the assignee is a contract to assign the patent after issue, and creates an equitable title in the assignee." *Robinson on Patents*, section 789 ; *Hammond* v. *Pratt*, 16 O. G. 1235. And the recording of such an assignment is not even constructive notice. *Robinson on Patents*, section 785.

But purchasing an equitable title, he acquires it subject to all antecedent equities ; and of these antecedent equities he necessarily has constructive notice from the very fact that he is purchasing an equity. " But where the purchase is of a mere equity, which owes its existence to the Court

of Chancery, and cannot be enforced without its aid, the maxim, *nemo plus juris in alium transferre potest quam ipse habet*, applies with full force. In other words, the purchase of an equitable estate is regarded by a chancellor as the purchase of a legal estate is viewed at law, it being true in both instances that he who is first in point of time has the better right." *Basset* v. *Nosworthy*, notes, 2 Wh. & T. Ldg. Case in Eq. (ed. 1877), page 67. In all the patent cases the question of notice becomes material only when the subsequent purchaser acquires the legal title. *Walker on Patents*, section 286; see *Davis* v. *Davis*, 22 Blatch, 221–2; *Wright* v. *Randel*, 19 Blatch, 495; *Newell* v. *West*, 13 Blatch, 117.

But, aside from this, there is no doubt but that by virtue of the agreement the equitable title for this invention did vest in the Campbell Barrel Co. The agreement embraces: 1. Improvements which he shall make to the machines described therein; and 2. Any invention he may make or discover for the preparation of the material for and manufacture of barrels, kegs or packages.

The patent in suit is described in the specification to be an invention for " certain new and useful improvements in machines for making barrels, kegs, &c." It, therefore, certainly comes under the second part of the aforegoing agreement, and the appellee submits that it is embraced also by the first part of the agreement. One of the applications for patent described in the agreement was numbered 410,206. This was a patent for a setting-up, or forming machine, for barrels. A comparison of this patent with the patent in suit will show that both describe a process for cheaply and expeditiously putting prepared staves on barrel heads, only the latter process, by revolving the barrel heads, is much more effective than the prior patent, and a great improvement thereon. The authorities are clear and full on the proposition that an assignment, or agreement to assign, future improvements that may be invented, or future inventions along a certain line of work, vest an equitable title in the inventions

as soon as made.   *Nesmith* v. *Calvert*, 1 Wood & Min. 34 ;
*Troy* v *Corning*, 14 How. 209 ; *Davis* v. *Davis*, 22 Blatch.
221–2 ;   *Wright* v. *Randel*, 19 Blatch. 495 ; *Littlefield* v:
*Perry*, 21 Wall. 226; *Aspinwall Mfg. Co.* v. *Gill*, 32 Fed.
Rep. 697 ; *Bonsack Mch. Co.* v. *Hulse*, 57 Fed. Rep. 519.

FOWLER, J., delivered the opinion of the Court.

On the eighth of December, 1894, Walter H. Harrison,
the appellant, claims to have entered into an agreement under
seal with the appellee, Franklin J. Morton.   By the terms
of this agreement Harrison was to assign to Morton a cer-
tain invention for a machine to make barrels and kegs, for
which application had been made to the Patent Office by
Henry Campbell, the inventor.   Harrison alleged himself to
be the owner of this invention by virtue of an assignment
from the inventor.   By the terms of this alleged agreement
Morton was to pay Harrison the sum of one hundred thou-
sand dollars in consideration of the sale and conveyance to
him of all Harrison's rights under said assignment from the
inventor, within ·ten days after the issuing by the United
States of letters patent for the invention, and also as part of
the consideration for said sale and conveyance Morton was
to transfer to Harrison a certain number of full-paid and non-
assessable shares of a corporation to be formed by the
former, who was also to pay Harrison a sum equal to forty
per cent. of the gross royalties upon sales of the patented
machines under patents issued by the Government.   On the
8th of February, 1895, Harrison sued Morton in covenant
on the agreement of the 8th December, 1894, alleging in
his *narr.* ownership of the patent under assignment from the
inventor, the sale and conveyance thereof to Morton, and
the consideration therefor as above mentioned, the assign-
ment to Morton, and the issuance and delivery to him of
letters patent and acceptance thereof by him, and his failure
to comply with said agreement.   Harrison claimed as dam-
ages $300,000.   To this *narr.* Morton pleaded, first, *non est
factum ;* second, fraud ; and third, undue influence in pro-

curing his signature to the agreement sued on. He also pleaded three additional pleas on equitable grounds, first, that there was no consideration for the alleged contract; second, that at the date of the alleged contract Harrison was not the owner of and had no valid title to said invention and machine; third, that at the time of said alleged assignment to Morton of the patent, Harrison, the plaintiff, was not the owner and had no valid title to the same. The defendant also filed a plea of set-off and a bill of particulars thereof, amounting to over $31,000. The case was tried before the Court without a jury, and resulted in a verdict for defendant for $35,091.65.

A number of questions which we do not feel called on to consider here were discussed at the hearing by counsel for both parties. The character and standing of the parties in the city of Baltimore, and the career of one of them as illustrated by former litigation in the Courts of this State are not necessarily, or indeed, at all involved in this controversy. We are concerned with the exceptions which we find in the record, and shall proceed to discuss them with as much brevity as their proper consideration will permit.

The third and fifth exceptions have been abandoned.

The plaintiff had offered evidence tending to prove that the contract sued on was valid, binding and operative, and that in pursuance thereof the defendant had paid certain sums of money and had done certain acts. When the defendant was examined as a witness he was asked whether before the contract was executed he had any conversation with the plaintiff, and if so, what he had agreed upon and on what terms, in connection with that patent device? The objection of the plaintiff to the asking of this question was overruled, and this constitutes the first exception. The objection appears to be two-fold. First, that no parol evidence of prior agreements are admissible to vary or alter the written contract sued on, and second, that the proposed question, so far as it was asked for the purpose of eliciting testimony upon the issue of fraud and undue influence in

procuring the signature of the defendant to said contract, was irrelevant because there was no such issue in the case, the Court below having found, and so declared by plaintiff's second prayer, which was conceded by the defendant, that there was no legally sufficient evidence in the cause to show such fraud. In regard to the first ground of the objection all difficulty would seem to disappear when we remember that the issue is, not as to the construction of a contract, or what the contract is, but whether there is any contract in existence. The defendant pleaded *non est factum*, and evidence which tended to show that the money paid and acts done by the defendant were paid and performed not in pursuance of the alleged contract, but in execution of another contract, and at the same time to show that although the alleged contract was signed by both parties, it had never become operative because never delivered, would clearly be admissible.

The rule which excludes parol testimony when offered to vary or contradict a written instrument can, of course, have no application here, for the testimony objected to was offered not to vary or contradict the contract, but to prove it had no existence. *Guardhouse* v. *Blackburn*, L. R., 1 P. & D. 115. In the case of *Pym* v. *Campbell*, 6 El. & Bl. 374, ERLE, J., said : " The distinction in point of law is that evidence to vary the terms of an agreement in writing is not admissible, but evidence to show that there is no such agreement at all is admissible." To the same effect *Ware* v. *Allen*, 128 U. S. 596. And in regard to the second ground of objection, it may be said that it does not appear that the testimony objected to was offered to show fraud, but to establish the defendant's contention that the contract, although signed by both parties, was not to be valid and binding until the defendant should so determine, and that in the meantime he was to hold it " in trust." And in point of fact, he appears to have held possession of the paper until it was produced in the Court below upon the demand of the plaintiff. What we have said in regard to the first exception applies also to the fourth.

The second exception was taken to the refusal to rule out a question put to the defendant in regard to an arrangement by which he agreed to, and did, advance $2,500 to enable the plaintiff to exploit a North Carolina gold mine, and the representations then made by the plaintiff to the defendant in regard to money the plaintiff owed the defendant. The testimony in regard to the gold mine was offered for the purpose of explaining the circumstances under which the defendant, according to his testimony, determined, with the assent of the plaintiff, that the contract, the cause of action here, should never be considered operative. It was by a speculation in this gold mine with the money borrowed from the defendant that the plaintiff promised to pay the defendant some $25,000 then due, and when, instead of paying this, or any sum, the plaintiff drew a draft on the defendant for $1,175, the defendant thereupon determined to exercise his option of declaring the contract inoperative. The object of the plaintiff was to show the contract was valid, and he had offered much evidence in support of his contention, and therefore the defendant had a right, as we have already said, not only to show the contrary, if he could do so, but also the circumstances under which his alleged right to declare the contract void was exercised. As we have said, the testimony admitted certainly tended to that end.

The sixth exception involves the admissibility in evidence of the minutes of the Campbell Barrel Company to show that the inventor, long previous to the contract of Dec. 8, 1894, and before the date of his assignment to the plaintiff, Harrison, had agreed to sell and transfer, and that the said company had agreed to purchase, the invention and patent rights which are alleged to have been sold and assigned by the plaintiff to defendant, and that the inventor having assigned all his right and title to said invention to said Barrel Company, he had nothing to assign to the plaintiff and therefore the latter could pass nothing to the defendant. It was shown that the original paper by which this alleged assignment was made by the inventor to the Bar-

rel Company, a copy of which is contained in the minutes of the latter, was searched for among the papers of said company, and in other places where it was believed it might be found, but it was not discovered. We think, under the circumstances, a proper foundation was laid for the introduction of the copy as secondary evidence. But, independent of this view, it would seem that the minutes are admissible to show, and they were offered for that purpose, that the plaintiff, having sold his patent to the Barrel Company, could not again sell it to the defendant. The minutes are the best evidence to show that the stockholders agreed to and ratified the proposition of the inventor to subscribe for $90,000 of the company's stock and pay for his subscription by an assignment of his said patent. *Beach on Private Corporations*, sec. 295.

The effect of this evidence will be considered under the seventh and last exception, which relates to the rulings upon the prayers, and which we will now consider.

We think there can be no doubt that the defendant's two prayers were properly granted. By the first the Court declared as matter of law that upon the pleadings the burden was upon the plaintiff to prove the delivery of the sealed instrument sued on, and that if the Court, sitting as a jury, should find that said paper never was delivered, the verdict must be for the defendant. The second prayer recites the evidence more at length, but asserts the same proposition of law, which appears to be well settled in this State. *Edelen* v. *Saunders*, 8 Md. 129. We discover no inconsistency between the two prayers. The plaintiff specially excepted to the second on the ground that there was no evidence in the cause legally sufficient to prove the facts therein set forth. It is clear, however, that the testimony of the witnesses, Morton and Coale, support the facts set forth in this prayer, and we have already held it to be competent and admissible under the issue made by the plea of *non est factum*.

We will now consider the prayers of the plaintiff. He offered five, the second having been conceded and the fifth granted.

The controlling proposition in this part of the case is that contended for by the plaintiff in his first, third and fourth prayers, namely, that there is no legally sufficient evidence in the case to show that he had any knowledge or notice of the agreement between the inventor, Campbell, and the Campbell Barrel Company. The correctness of this contention of the plaintiff depends, first, upon the legal effect of the assignments from Campbell to the plaintiff, and, secondly, upon the effect of the contract of Campbell .with the Campbell Barrel Company—that is to say, whether said Campbell thereby assigned to said company an equitable title to his invention prior in date to the title he claims to have assigned to the defendant, which latter title the plaintiff claims to be an absolute legal title ; and the defendant's contention on the contrary is that it is a mere equitable title subsequent in date, and therefore inferior to the title of the Barrel Company. The plaintiff claims title through two assignments from Campbell, each being for one-half interest in a certain application filed in the Patent Office of the United States at Washington, D. C., which application is for letters patent covering the invention of a machine for forming and making barrels and kegs.

It will be found upon an examination of these instruments that they do not contain a request to the Commissioner of Patents to issue letters patent to the plaintiff. Notwithstanding they were recorded in the Patent Office, letters patent were issued in the name of Henry Campbell, the inventor, and the defendant contends that the legal effect of such an assignment, in which the inventor fails to embody a request to the Commissioner of Patents to issue letters to the assignee, is to convey to such assignee only an equitable title. It is conceded that by one of the rules of the Patent Office the Commissioner will not, and cannot, issue the letters patent to an assignee, unless specially requested so to do by the terms of the assignment. One of the witnesses refers to this rule in his testimony. The patent having been issued to Campbell instead of to the defendant, the witness thus explains :

" I ascertained that the probable reason why it (the patent) had not been issued to Mr. Morton was this : The original assignment from Mr. Campbell to Mr. Harrison did not contain the request which the rules of the Patent Office required in order that the patent should be issued in the name of the assignee." *Rule* 26, *Rules of Practice in the U. S. Patent Office*, page 9.    Revised April 1, 1892.

Remembering that the assignments from Campbell to the plaintiff which we are now considering were made before the issue of letters patent, let us ascertain what such a conveyance carries.    The assignment of a right to obtain letters patent is " in effect, a contract to assign the patent when issued, and as such is enforceable in equity."    But " such an instrument creates no legal title to the patent in the assignee."    1 *Robinson on Patents*, sec. 411–414.    The same author (sec. 764) thus speaks of an assignment like the one we are considering, which was made before the issue of letters.    " An assignment of a completed invention may be made either before or after the issue of the patent.    An inventor has, by virtue of his inventive act, not merely the ownership of his invention, but an inchoate right to the monopoly, which is to become vested upon his *application for and receipt of letters patent*.    This ownership of the invention and inchoate right to perfect his title to the monopoly by obtaining letters patent is made assignable by law equally with the patented invention ; and an assignment covering these rights and properly recorded secures to the assignee both the invention and monopoly immediately on *the issue of the patent*.    To authorize an issue of the patent directly to the assignee, however, the instrument of assignment *must contain* a written request to the Commissioner of Patents that the letters patent may be granted to the assignee."    *    *    *    " Such a conveyance transfers to the assignee the legal title as well as the equitable to the patented invention."    *    *    *    " An instrument purporting to be an assignment, but not containing the request    *    *    *    does not convey the legal title to the

patented invention." One of the earliest cases in which this rule, thus explained by the learned author, was adopted, is that of *Gayler* v. *Wilder*, 10 Howard, 480, in which CHIEF JUSTICE TANEY, delivering the opinion of the Supreme Court, said : " The discoverer of a new and useful improvement is vested by law with an inchoate right to its exclusive use, which he may perfect and make absolute by proceeding in the manner which the law requires." Again, he says : " It appears by the language of the assignment that it was intended to operate upon the perfect legal title which he then had the lawful right to obtain, as well as upon the imperfect and inchoate interest which he actually possessed. *The assignment requests that the patent may issue to the assignee.*" As we have seen, it is required when letters are to be issued to an assignee, the assignment must contain that request, *Rule 26, p. 9.* But it was suggested that such a rule is a mere regulation for the convenience of the Patent Office, and was not binding. But the rules established by the Commissioner of Patents, " are, until abrogated, as binding as the law itself, not only upon him and his inferior officers, but upon persons doing business with his department, provided such rules are not in contravention of any statute." *U. S. Rev. Stat., 1874,* sec. 483 ; 1 *Robinson on Patents*, p. 84 and note.

It follows from what C. J. TANEY says in *Gayler* v. *Wilder, supra*, that prior to the issue of letters patent to the inventor he has an imperfect inchoate right to its exclusive use, which he may perfect and make absolute by taking the steps required by law, and especially by having letters patent issued to him. Or he may by an assignment of this inchoate right, coupled with a request to issue letters to his assignee in compliance with Rule 26 of the Patent Office, transfer to such assignee a legal title to such invention. The legal title passes to the assignee under such an assignment, because he has under it, as the inventor had by law, the right to secure letters in his own name. But the only way in which such letters, which are the evi-

dence of a perfect legal title, can be secured by the assignee is by the request of the inventor first, and of his assignees as the case may be, expressed in the assignment. It appears by the evidence that the letters for the invention and patent which the plaintiff claims to have sold and assigned to the defendant for $100,000, never have been in the name of either. Letters patent were issued to Henry Campbell, the inventor, although every effort was made by the plaintiff to have them issued to the defendant. In the case of *Wright* v. *Randle*, 8 Fed. Rep. 591, BLATCHFORD, J., cites *Gayler* v. *Wilder, supra,* to show that an assignment with request to issue letters to assignee passes the legal title. But in referring to another assignment before the Court he says in the same case: " The instrument provided that Randle (the inventor) should apply for new patents for the past improvements, but it did not, while assigning the improvements, provide that the new patents should be issued to Randle and the assignee jointly. Out of this all the trouble has arisen." Further on in the opinion the following language shows what the trouble was: " The omission of a request by Randle to the Commissioner to issue the patent to the assignee jointly with himself * * * enabled Randle to make a second transfer of the invention, and to secure the issuing of the patent as it was issued," that is to himself and two others. The general rule appears to be that an assignment without the request conveys only a equitable title. See also *Davis Wheel Co.* v. *Davis Wagon Co.,* 22 Blatchford, 221 ; *Hendrie* v. *Sayles,* 98 U. S. 551 ; *U. S. Stamping Co.* v. *Jewett,* 7 Fed. Rep. 877 ; *Littlefield* v. *Perry,* 21 Wall. 205 ; *Newell* v. *West,* 13 Blatchford, 114 ; *Nail Co.* v. *Corning,* 14 How. 193.

It would seem, therefore, that the rule so broadly laid down by the learned author (*Robinson on Patents*), if not adopted in clear and distinct terms, has been often recognized and never repudiated, by the Courts having general jurisdictions of questions arising under the patent laws of the United States. Applying the rule we have been con-

sidering to the assignments from Campbell to the plaintiff, it will follow that the plaintiff took from Campbell, and could sell and assign to the defendant only an equitable title, because those assignments were not drawn as required by law to carry the legal title. What, then, is the result? In the case of *Chew* v. *Barnett,* 11 S. & R. 389, C. J. GIBSON said, an equitable title "is in truth nothing more than a title to go into chanceery to have the legal estate conveyed, and, therefore, every purchaser of a mere equity takes subject to every clog that may lie on it, *whether he has notice or not.*" And to the same effect are *Bassett* v. *Nosworthy,* notes to 2 White and Tudor's Ldg. Cas. in Equity, 67 ; *Shiras* v *Caig,* 7 Cranch, 34–38 ; *Phillips* v. *Phillips,* 4 DeGex, F. & J. 208–215. If, therefore, the Campbell Barrel Company acquired an equitable title to the patent, as it undoubtedly did under its contract with the inventor before the assignment of the equity to the defendant, the latter took subject to the equitable title in the said company, and the first, third, and fourth prayers of the plaintiff were properly refused, for they all asked the Court to say that there was no legally sufficient evidence to show that the plaintiff had knowledge, or notice of the agreement between the plaintiff and the Barrel Company. But as we have seen, knowledge and notice will be imputed to him, as C. J. GIBSON said in *Chew* v. *Barnett,* *supra,* "whether he had notice or not," holding as he did only an equitable title.

By the fifth prayer of the plaintiff, which was granted, from which ruling there has been no appeal, the Court below held that the agreement of Campbell with the Barrel Company was no defence to this action, if the Court should find that by the true construction of that agreement the invention and device described in the contract sued on is not embraced within said agreement. Inasmuch, however, as there was a verdict for the defendant, it follows that the Court below must have found that the invention and device described in the declaration was embraced in the Campbell agreement, and that, therefore, the latter was a good defence to this action.

It will appear from an examination of the whole case that the only other alternative upon which the Court below could have found a verdict for the defendant was that the contract sued on never was in force, so that in neither event could there have been a verdict for the plaintiff.

Finding no error in the rulings of the learned Judge below, the judgment will be affirmed.

*Judgment affirmed.*